JAMES FLAHERTY, Plaintiff-Appellant, v. THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—98—4141

Opinion filed December 30, 1999.

Stanley H. Jakala, of Berwyn, for appellant.

David R. Kugler, of Chicago, for appellees.

JUSTICE TULLY delivered the opinion of the court:

Defendant, the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board), granted plaintiff, James Flaherty, ordinary disability benefits in the amount of 50% of his base salary after finding that his disability was not caused by an injury incurred while on duty as a Chicago police officer. Plaintiff appeals from the circuit court's order affirming the Board's decision, contending that the decision was against the manifest weight of the evidence, was arbitrary, capricious, and unreasonable, and that he was entitled to duty disability benefits in the amount of 75% of his base salary.

For the reasons that follow, we affirm.

Plaintiff was appointed a Chicago police officer on December 11, 1978, and remained on active duty until April 1995. On April 30, 1995, plaintiff was getting out of bed when he felt a sharp pain in his back. He collapsed in his kitchen a short while later, with pain that radiated from the lower left side of his back down his left leg.

Plaintiff suffered several work-related injuries that he claimed caused the April 1995 incident. He injured his back while making arrests, once in 1979 and twice in 1988. However, the injury that plaintiff primarily credits with having caused his disability was a July 12, 1989, incident during which his three-wheeled Chicago police department (CPD) motorcycle was hit from behind by a vehicle traveling about 30 miles per hour faster than his motorcycle. Plaintiff stated that his body slammed backward onto the rear compartment of the motorcycle and that he was treated for a back sprain as a result of that incident. Plaintiff also suffered back injuries as the result of an off-duty car accident in 1980 and an off-duty fall on a patch of ice in 1984. Plaintiff was able to return to full duty following each of these incidents and did not suffer any other back-related injuries during the six-year interval between the accident in July 1989 and the debilitating pain that began in April 1995.

A few days after the April 1995 incident, plaintiff was seen by Dr. David Smith, an orthopedic surgeon. Dr. Smith gave plaintiff several epidural steroid injections and ordered a magnetic resonance imaging (MRI) study of plaintiff's spine. The MRI indicated that plaintiff had "degenerative disc disease *** with evidence of disc herniation at all levels." Although plaintiff was still being treated by Dr. Smith at the time of the hearing, Dr. Smith did not testify.

Plaintiff was next evaluated by Dr. Daniel J. Hurley on June 27, 1995. Dr. Hurley theorized that plaintiff herniated his "L3-4" disc to the point that it "severely irritated the left L3 or L4 nerve root" on April 30, 1995. He did not recommend that plaintiff return to work, but noted, "[r]elative to the incident of April 30, 1995, obviously this happened at home. *** In my opinion, certainly that particular incident did not happen at work. As far as the appearance of his back by MRI scan and how much that relates to work injuries, one would have to conjecture that his multiple injuries may have contributed." Dr. Hurley recommended that plaintiff have a myelogram CT scan in order to determine whether surgery was necessary.

On February 6, 1997, plaintiff was examined by Dr. Scott A. Kale, who specializes in internal medicine and rheumatology. According to Dr. Kale's report, the injury that plaintiff sustained on July 12, 1989, caused his disabling back condition. Dr. Kale stated:

> "As a result of that duty related trauma, he is disabled to the extent that he cannot perform police duties. To a reasonable degree of medical certainty, there is a direct relationship between his work accidents as a Chicago policeman and in particular, the incident of July 12, 1989, and his current, permanent, disabled condition."

At the hearing, Dr. Kale testified that he reached this conclusion after giving plaintiff a full examination and reviewing reports from Dr. Smith and Dr. Hurley along with the MRI ordered by Dr. Smith. Dr. Kale expanded upon the opinion offered in his report, testifying that a man of plaintiff's age would not suffer from the degenerative back condition that he suffered from absent some repetitive or acute trauma.

Two physicians testified at the Board's request. Dr. Marshall Matz, a neurologist, saw plaintiff on April 9, 1996. In his report, Dr. Matz stated that, after reviewing the MRI, he did not believe plaintiff's back condition was disabling. At the hearing, he testified that, although his review of the MRI showed an "extruded" disc fragment, he did not find any evidence of a neurologic disability and that he did not see anything to indicate that plaintiff could not resume full, unrestricted police duty.

Dr. S. David Demorest, a family practitioner employed by the

Board, stated that he examined plaintiff on July 15, 1996, and that he did not believe that plaintiff's injuries resulted from the July 1989 accident. He testified that, in his opinion, plaintiff suffered from "chronic low back pain syndrome[,] *** degenerative disc disease, *** is deconditioned, and *** [has] muscle sprains and strains." He furthered testified that degenerative disc disease is a culmination of all of life's traumas, including daily living, and is part of the aging process in everyone. Ultimately, both Dr. Matz and Dr. Demorest were of the opinion that plaintiff may have been suffering from degenerative disc disease prior to 1995 but that the event that caused his debilitating pain occurred on April 30, 1995.

The Board found that plaintiff did not establish a causal connection between the injuries he complained of and the duty-related incident of July 12, 1989, and that plaintiff's inability to return to full duty with the Chicago police department was due to the off-duty incident of 1995. As a result, the Board found that plaintiff did not qualify for duty disability benefits but was instead entitled to ordinary disability benefits.

Plaintiff begins by arguing that the Board's decision was against the manifest weight of the evidence in that the evidence showed that his injury occurred on duty, thereby entitling him to duty disability benefits rather than ordinary disability benefits.

■ On review, the findings of fact of an administrative agency are *prima facie* true and correct and will not be disturbed unless contrary to the manifest weight of the evidence. *Chicago Transit Authority v. Doherty*, 291 Ill. App. 3d 909, 912 (1997); *Barron v. Ward*, 165 Ill. App. 3d 653, 659 (1987). The decision of an administrative agency is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). This deferential standard requires affirmance if there is "any competent evidence in the record to support the agency's determination." (Emphasis omitted.) *Alden Nursing Center—Morrow, Inc. v. Lumpkin*, 259 Ill. App. 3d 1027, 1032 (1994). The administrative agency has the responsibility to weigh evidence, determine credibility and resolve any conflicts in the evidence. *Nichols v. Department of Employment Security*, 218 Ill. App. 3d 803, 809 (1991). Finally, we review the administrative decision rather than the circuit court's decision. *Calabrese v. Chicago Park District*, 294 Ill. App. 3d 1055, 1065 (1998).

■ The "Duty Disability Benefit" section of the Illinois Pension Code provides:

"An active policeman who becomes disabled *** as the result of injury incurred *** in the performance of an act of duty, has a right

to receive duty disability benefit *** equal to 75% of his salary ***." 40 ILCS 5/5—154(a) (West 1996).

This section provides for duty disability benefits where the disability occurs as a result of, or is caused by, an on-duty injury. *Samuels v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 289 Ill. App. 3d 651, 661 (1997).

■ Where a policeman is disabled as the result of an injury incurred off duty, the "Ordinary Disability Benefit" section of the Pension Code states:

"A policeman less than age 63 who becomes disabled after the effective date as the result of any cause other than injury *** in the performance of an act of duty, shall receive ordinary disability benefit during any period *** of disability exceeding 30 days, for which he does not have a right to receive any part of his salary. ***
***

Ordinary disability benefit shall be 50% of the policeman's salary *** at the time disability occurs." 40 ILCS 5/5—155 (West 1996).

■ Having reviewed the record, we cannot say that the Board's finding was contrary to the manifest weight of the evidence. None of the doctors who testified could state with certainty that plaintiff's herniated disc was caused by the series of on-duty accidents culminating with the incident that occurred in July 1989, six years before he became incapacitated by his back problems. Though Dr. Kale testified that the injury was likely caused by accumulative trauma to his back, he also testified that he could not specifically relate plaintiff's disability to accidents that occurred while plaintiff was on duty. Dr. Matz and Dr. Demorest both testified that plaintiff's disc was herniated in 1995 while he was off duty. Dr. Hurley's report also indicated that he believed that the injury occurred in 1995 rather than 1989.

■ Plaintiff next argues that Dr. Matz should not have been allowed to testify because, according to section 5—156 of the Pension Code (40 ILCS 5/5—156 (West 1996)), where the Board wishes to explore a secondary opinion the applicant is to choose the doctor from a list compiled by the Board. Plaintiff claims that, in this case, he was not given an opportunity to choose the secondary doctor.

The same argument was made by the plaintiff in *McManamon v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 298 Ill. App. 3d 847, 853-55 (1998). There, the plaintiff was directly referred to a second doctor by Dr. Demorest. Prior to the hearing, she filed a motion to exclude the testimony of the second doctor, which the Board denied without explanation. On appeal, we found that the Board's failure to allow the plaintiff to choose the second doctor according to the

terms of section 5—156 violated the statute. However, we went on to find that the statutory violation did not prejudice plaintiff since the Board's conclusion was supported by the record even if the testimony was excluded.

Here, unlike *McManamon*, plaintiff waited until after Dr. Matz had testified to make an objection. There is nothing in the record to indicate that he filed a motion to exclude Dr. Matz's testimony or that he made an objection prior to the doctor's testimony. Moreover, plaintiff concedes that Dr. Matz's report was entered into evidence by stipulation of the parties. In addition, the record indicates that plaintiff saw Dr. Matz prior to seeing Dr. Demorest and prior to filing his application for disability benefits with the Board. Thus, it is not clear that Dr. Matz would be considered a secondary doctor under section 5—156, and *McManamon* does not necessarily foreclose this issue.

Further, we find that the testimony of Dr. Demorest and Dr. Kale, along with the report prepared by Dr. Hurley, would have been sufficient to support the Board's conclusion even in the absence of Dr. Matz's testimony and report. All of these doctors stated that they could not link plaintiff's disability to the accident of July 12, 1989, with any certainty. The significant amount of time that lapsed between the 1989 incident and the disabling pain plaintiff began to experience in 1995 supports this inability to link the two incidents and suggests in and of itself that plaintiff's disability was not caused by an on-duty incident.

█ Finally, plaintiff argues that the exchange between the Board and his attorney during cross-examination of Dr. Matz and Dr. Demorest indicates that the Board was biased against him and that he did not receive a fair hearing. During his cross-examination of Dr. Demorest, the following exchange took place:

"MR. PAUL D. GEIGER: Do you believe the degenerative disk [*sic*] disease which Officer Flaherty suffers is trauma-related?

DR. S. DAVID DEMOREST: Degenerative disk [*sic*] disease is a culmination of all of life's traumas, including daily living, wear-and-tear, car accidents, football accidents, basketball accidents, etcetera.

MR. PAUL D. GEIGER: So the answer is yes, it's trauma-related?

MS. SANTOS: No, I think he answered the question. Would you like the answer read back to you?

MR. PAUL D. GEIGER: No, I can question him on my own.

MS. SANTOS: You're not, obviously, doing it. If you want to testify, then we'll put you under oath and let you testify. But I think the doctor answered your question.

If you would like I would be more than happy to have the court reporter read you his answer.

MR. PAUL D. GEIGER: I don't need you to do anything.

MR. KUGLER: Let's move on.

MR. PAUL D. GEIGER: Well, I don't appreciate being attacked, getting up, walking in and out, huffing and puffing, putting her head down on the desk while the hearing is in session—

MR. KUGLER: Well, wait—

MR. PAUL D. GEIGER: Tell me it doesn't happen. You're all here. I'm relating what's happening down here. If somebody wants to stand up and say it didn't happen, stand up and call me a liar.

MR. KUGLER: Counsel, let's get to the issues of the case."

While cross-examining Dr. Matz, plaintiff's attorney asked "Doctor, could you tell the members of the Board approximately how many millions of dollars you have made testifying for employers at the Industrial Commission?" The Board's attorney objected to the question, and Dr. Matz was prevented from answering it after the Board found that it was not relevant to the issues before them. Plaintiff's attorney was eventually asked to "move on" when he asked several more specific questions of the same type.

In order to demonstrate bias or prejudice, a claimant must show that the Board was not able to judge the controversy fairly and on the basis of its own circumstances. *Danko v. Board of Trustees of the City of Harvey Pension Board*, 240 Ill. App. 3d 633, 641 (1992). Bias is indicated where " 'a disinterested observer might conclude that the administrative body, or its members, had in some measure adjudged the facts as well as the law of the case in advance of hearing it.' " *Danko*, 240 Ill. App. 3d at 642, quoting *A.R.F. Landfill, Inc. v. Pollution Control Board*, 174 Ill. App. 3d 82, 89 (1988).

In *Danko*, the chairman of the board was the plaintiff's supervisor during his employment with the police department and was intricately involved in the events that led up to the hearing. He commented during the hearing that plaintiff was a "liar" and that the plaintiff should have been willing to undertake the light-duty position that he offered him. His involvement in the case, along with the comments made at the hearing, were enough to indicate that he was biased against plaintiff. *Danko*, 240 Ill. App. 3d at 643-44.

Here, the comments of the Board during the cross-examination of Dr. Demorest and Dr. Matz did not rise to the level that would indicate bias. There is nothing in the exchange between the Board and plaintiff's attorney to show that any of the members had prejudged the facts or the law of the case. At most, a few members of the Board expressed irritation with the line of questioning pursued by plaintiff's attorney. However, there is nothing in the record to indicate that plaintiff did not receive a fair hearing.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

O'MARA FROSSARD, P.J., and RAKOWSKI, J., concur.