ROBERT BARRINGER, Plaintiff-Appellant, v. RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—99—0933

Opinion filed September 29, 2000.

Stanley H. Jakala, of Berwyn, for appellant.

Burke, Burns & Pinelli, Ltd., of Chicago (Mary Patricia Burns and Edward J. Burke, of counsel), for appellees.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Defendant Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago (Board) denied plaintiff Robert Barringer's application for occupational disease disability benefits. The circuit court upheld the Board's decision. On appeal, plaintiff contends that the Board's decision was against the manifest weight of the evidence.

The record reveals that on January 7, 1997, plaintiff, who was employed as a paramedic with the Chicago fire department, was hospitalized after suffering a stroke. Seven weeks later, plaintiff underwent surgery to close a hole in his heart. He thereafter applied for occupational disease disability benefits pursuant to section 6—151.1 of the Illinois Pension Code (Code) (40 ILCS 5/6—151.1 (West 1996)). Plaintiff did not apply for ordinary disability benefits. 40 ILCS 5/6—152 (West 1996).

At the hearing on his application for occupational disease disability benefits, plaintiff testified that the basis for his claim was that he had a stroke and a hole in his heart. He explained that he had open heart surgery to repair the hole and that his doctors told him that the hole had caused his stroke.

The Board also heard testimony from Dr. George Salvatore Motto, a physician-consultant for the Board, who based his testimony on a physical examination of plaintiff and a review of plaintiff's medical records. Dr. Motto testified that plaintiff's stroke was caused by a small blood clot that traveled through a congenital hole in plaintiff's heart and to his brain. The hole had been present in plaintiff's heart since birth. A cardiac catheterization documented the presence of the hole and an absence of coronary artery disease. After plaintiff recovered from the stroke and had surgery to close the hole, a cardiologist determined that plaintiff had no symptoms of heart disease. Dr. Motto stated that plaintiff was able to return to duty without restriction and that the stroke was "absolutely not" caused by anything related to service with the Chicago fire department.

The Board had before it multiple exhibits, including several medical records. Among the exhibits were a letter from the Chicago fire department's medical director, stating that plaintiff is unable to return to paramedic duties; plaintiff's "lay-up summary," detailing his work history and reasons for absences from work; a letter from an examining doctor stating that plaintiff was "advised to return to work in the capacity to which he will judge his own limits"; a letter from a cardiologist concluding that, based on plaintiff's performance in a treadmill exercise test, plaintiff is "Functional Class I"; a letter from plaintiff's neurologist relating that plaintiff was improving despite some residual numbness caused by the stroke; a presurgery letter from plaintiff's neurologist stating that he could not say with absolute certainty that the hole in plaintiff's heart was the cause of his stroke; a cardiac catheterization report concluding that plaintiff's stroke was caused by the hole in his heart and referring him for surgery to close the hole; and a letter from plaintiff's neurologist stating that the cause of plaintiff's stroke was determined to be a blood clot due to the congen-

ital hole in his heart and concluding that plaintiff is disabled from returning to his prior duties. Also among the exhibits was a letter from plaintiff's own physician, which stated that plaintiff's stroke was due to the defect in his heart and that plaintiff is unable to return to work in his former capacity.

The Board denied plaintiff's application, stating in a letter to plaintiff that it was denying his application for benefits under section 6—151.1 because "there is not sufficient evidence to substantiate that you are disabled as set forth in the Pension Code, Illinois Revised Statutes, Chapter 108½, Article VI, Section 6—152."

Plaintiff filed a complaint for administrative review, contending that the Board's decision to deny him both occupational disease disability benefits under section 6—151.1 and ordinary disability benefits under section 6—152 was against the manifest weight of the evidence. The Board asserted that, although it denied plaintiff's application for occupational disability benefits, it did not render a decision concerning ordinary disability benefits and that the reference to section 6—152 in its letter to plaintiff was a typographical error. Noting the Board's position that it did not render a decision concerning ordinary disability benefits, the circuit court declined to discuss the issue and held that plaintiff was free to apply for benefits under section 6—152. The circuit court then affirmed the Board's denial of occupational disease disability benefits, finding that there was no evidence in the record that plaintiff's heart problem was caused by any injury suffered on duty and no evidence that anything that occurred on duty had contributed to his condition.

On appeal, plaintiff contends that the Board's decision was against the manifest weight of the evidence. He argues that he is entitled to occupational disease disability benefits because his stroke was caused by on-duty injuries that aggravated his otherwise dormant, preexisting congenital heart condition.

■ ■ It is not a court's function to reweigh the evidence or make an independent determination of the facts on administrative review. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Instead, the court's function is to ascertain whether the agency's findings and decision are against the manifest weight of the evidence. *Abrahamson*, 153 Ill. 2d at 88. The decision of an administrative agency is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson*, 153 Ill. 2d at 88. This deferential standard of review requires that we affirm if the record contains any competent evidence to support the agency's decision. *Abrahamson*, 153 Ill. 2d at 88; *Flaherty v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 311 Ill. App. 3d 62, 65

(1999). It is the responsibility of the administrative agency to determine credibility, weigh the evidence, and resolve any conflicts in the evidence. *Flaherty*, 311 Ill. App. 3d at 65. A reviewing court may not substitute its judgment for that of the agency or reverse administrative findings merely because an opposite conclusion is reasonable or the reviewing court might have ruled differently. *Abrahamson*, 153 Ill. 2d at 88.

■ After reviewing the record, we cannot say that the Board's decision to deny plaintiff occupational disease disability benefits was contrary to the manifest weight of the evidence. We must give effect to the plain and unambiguous language of the Code. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215-16 (1983); *Carmody v. Retirement Board of the Fireman's Annuity & Benefit Fund*, 305 Ill. App. 3d 600, 606 (1999). The "Occupational Disease Disability Benefits" section of the Code provides, in relevant part, as follows:

> "Any active fireman who has completed ten or more years of service and is unable to perform his duties in the Fire Department by reason of heart disease, tuberculosis or any disease of the lungs or respiratory tract, resulting solely from his service as a fireman, shall be entitled to receive an occupational disease disability benefit during any period of such disability for which he does not have a right to receive salary." 40 ILCS 5/6—151.1 (West 1996).

In a separate section, the Code defines an "occupational disease" as a "sickness, disease or illness of the heart, lungs, or respiratory tract of a fireman, arising solely out of his employment as a fireman." 40 ILCS 5/6—112 (West 1996). Thus, the Code plainly and unambiguously requires that, in order to be entitled to occupational disease disability benefits, a fireman's disabling condition must have arisen or resulted "solely" from his employment or service as a fireman. 40 ILCS 5/6—112, 6—151.1 (West 1996).

Here, competent evidence exists in the record to support the Board's decision. Dr. Motto testified that plaintiff's stroke was "absolutely not" caused by anything related to his service as a paramedic with the Chicago fire department. Instead, the stroke was caused by a small blood clot that traveled to plaintiff's brain via a hole that had been present in his heart since birth. None of the medical reports or records introduced to the Board as exhibits indicated that plaintiff's stroke was caused solely from his service as a fireman. Moreover, plaintiff testified that the hole in his heart had caused his stroke. Given this evidence, the opposite conclusion, *i.e.*, that plaintiff's stroke was caused "solely from his service as a fireman," was not clearly evident.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.