FIRST DIVISION

No. 1-08-2722

LOUISE COLE,                          ) Appeal from the
                                      ) Circuit Court of
        Plaintiff-Appellee,           ) Cook County.
                                      )
        v.                            ) No. 07 CH 33144
                                      )
THE RETIREMENT BOARD OF THE           )
POLICEMEN'S ANNUITY AND               ) Honorable
BENEFIT FUND OF THE CITY OF           ) Stuart E. Palmer,
CHICAGO,                              ) Judge Presiding.
                                      )
            Defendant-Appellant.      )

PRESIDING JUSTICE HALL delivered the opinion of the court:

The plaintiff, Louise Cole, filed an application for disability benefits with the defendant, the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board). Following a hearing, the Board denied the plaintiff duty disability benefits but awarded her ordinary benefits. The plaintiff filed a complaint for administrative review. The circuit court reversed the Board's decision and remanded the case to the Board with instructions to award the plaintiff duty disability benefits at 50% of the plaintiff's salary.

The Board appeals, raising the following issues: whether the circuit court erred in reversing the decision of the Board; and whether the circuit court exceeded its statutory authority when it remanded the case to the Board, directing the Board to enter the award of benefits determined by the court. The plaintiff seeks an award of prejudgment interest.

On April 24, 2007, the plaintiff filed her application for

No. 1-08-2722

benefits.  On September 24, 2007, the Board heard the plaintiff's disability claim.  The evidence presented at the hearing consisted of the plaintiff's testimony and her medical records. No medical testimony was presented.  Because the sufficiency of the evidence is at issue, a detailed review of the evidence is required.

The plaintiff was appointed a member of the Chicago police department on June 19, 1991.  Prior to October 30, 1993, she had incurred injuries on August 7, 1991, August 6, 1992, March 8, 1993, and September 3, 1993.  The plaintiff had returned to full duty after each incident.

On October 30, 1993, the plaintiff was involved in an act-of-duty accident.  The squad car in which she was a passenger was struck by a vehicle traveling at a high rate of speed and containing multiple armed offenders fleeing from a carjacking. The plaintiff sustained injuries to her lower back, both knees, and her neck and chest.  Following the accident, the plaintiff was examined by Dr. John D. Sonnenberg.  According to his November 3, 1993, report, the doctor diagnosed the plaintiff as suffering from cervical myositis, lumbosacral strain, contusions to her left hand and left knee, strain of her left Achilles tendon but no rupture, and right ankle sprain.  X-rays of cervical and lumbosacral spine revealed spondylosis of the cervical spine and L5-S1 degenerative disc disease with narrowing at the lumbosacral junction.  She was placed on medications and

2

prescribed a course of physical therapy.  By January 26, 1994, she was on light duty and performing fairly well.  The February 16, 1994, MRI of her lumbar spine showed a mild central bulge at the L5-S1 level and facet spurring.  The MRI of her cervical spine showed spurs at C5-C6 and C6-C7.  The February 22, 1994, progress note stated that the plaintiff had myofascial pain syndrome of her lower back and cervical spine which was improving.  The plaintiff returned to duty with the police department.

On June 4, 1994, the plaintiff was involved in an altercation with an individual who was HIV positive and had tuberculosis.  In December 1994, she fell while conducting a missing persons investigation.  She returned to full duty after that incident.  On May 31, 1995, she was involved in an off-duty automobile accident.  She experienced pain on her right side, neck and shoulders.  She was prescribed rest and was off work for 13 days.   In September 1995, she sustained an insect bite and missed six days of work.

On May 10, 1996, while checking vehicle stickers, the plaintiff was injured when a vehicle backed into her, striking her right knee and thigh.  She was diagnosed with a contusion and sprains of the right knee and thigh.  The plaintiff was prescribed physical therapy and limited duty.  On May 24, 1996, she was returned to full duty.

On January 16, 1997, the plaintiff fell while entering the

3

police station. She was referred to Dr. Miller. Dr. Miller noted that the plaintiff had a three-year history of injuring her left foot and ankle and complained of chondromalacia to the knee. The doctor diagnosed a bunion and hammertoe and dorsal ankle strain with Achilles tendinitis. On March 13, 1997, the plaintiff returned to full duty. On March 30, 1997, the plaintiff was exiting a car when her right ankle "went out." She was referred to Dr. Gates, who diagnosed repetitive right ankle strain and right knee strain. The plaintiff was prescribed physical therapy and medication. She was released to return to work on May 27, 1997. On March 17, 1998, the plaintiff was bitten while rescuing a dog from a burning building.

On September 21, 1998, the plaintiff fell while leaving the police station. Her gun jammed into her hip, and she injured her right elbow, knee, hip and ankle. On November 17, 1998, Dr. Bockel examined her. The plaintiff complained of right knee pain relating to the September 21, 1998, incident. An X-ray showed mild osteophytes and mild patellofemoral degenerative joint disease. The plaintiff was referred to Dr. Luke. An MRI of the knee showed mild degenerative joint disease and mild mensical degeneration, but there was no tear. The plaintiff returned to full duty in December 1998.

On March 1, 1999, the plaintiff was examined by Dr. Luke. The plaintiff complained of lateral hip pain radiating just below the knee into the calf. Dr. Luke referred the plaintiff to Dr.

4

Lambur. X-rays of her hip showed evidence of degenerative joint disease. According to Dr. Lumbar, the plaintiff's hip condition was not related to her September 21, 1998, injury. Subsequently, the plaintiff was examined by Dr. Girzadas and Dr. Al-Aswad, both of whom concluded that the plaintiff's hip condition was related to her September 21, 1998, injury.

On June 17, 1999, Dr. Girzadas recommended physical therapy, which the plaintiff under went from June to November 1999. On October 18, 1999, Dr. Girzadas noted that the MRI and EMG of the plaintiff's right hip were normal; physical therapy was continued. On November 15, 1999, the plaintiff complained to Dr. Girzadas of hip and leg pain. The plaintiff was ordered to continue the present treatment plan and to follow up. A bone scan was ordered on December 6, 1999.

On February 21, 2000, the plaintiff saw Dr. Girzadas complaining of hip pain. The bone scan showed degenerative changes to her ankle and feet.[1] By June 5, 2000, Dr. Girzadas noted that the plaintiff was doing well on light duty; she was to follow up in six months.

On June 20, 2001, the plaintiff was crossing the street to report to work when she slipped on an oily substance and fell, injuring her right hip and wrist. X-rays of her hip showed evidence suggesting prior trauma and no fracture to her right wrist.

---

[1]The record does not indicate which ankle.

On November 19, 2001, Dr. Everakes diagnosed the plaintiff with fibromyalgia and degenerative joint disease. The plaintiff was treated by Dr. Katz for her fibromyalgia. Due to the fibromyalgia diagnoses, the plaintiff was off duty or on limited duty between April 24, 2004, and February 25, 2005, when she returned to limited duty.

On April 26, 2005, the plaintiff began seeing Dr. Harun Durudogan. She was suffering from traumatic arthritis. The doctor recommended joint supplements and nonsteriodal anti-inflammatory medications. The plaintiff saw Dr. Durudogan on November 17, 2005, complaining of hip pain. The November 17, 2005, X-rays indicated degenerative disc disease at L5-S1 and minimal degenerative changes in her hip. Dr. Katz took the plaintiff off duty between February 11 and February 25, 2006.

On April 14, 2006, while exiting the restroom at the police station, the plaintiff slipped and fell, injuring both knees. On May 19, 2006, the plaintiff related to Dr. Durudogan that she had experienced lower back pain, bilateral knee pain and left shoulder pain ever since the October 30, 1993, incident. She complained of radicular symptoms, which had been intermittent, but now were constant. She also complained of myositis and pain related to her fibromyalgia. Dr. Durudogan examined the plaintiff and diagnosed a herniated nucleus pulposus, L4-L5/L5-S1, greater on the right than the left. The doctor recommended sedentary light duty, physical therapy, medication and that the

6

plaintiff undergo an MRI of her lumbosacral spine. Dr. Durudogan referred the plaintiff to Dr. Richard Lim.

In his May 25, 2006, report to the medical services department, Dr. Lim noted that the plaintiff had been on disability for right-sided hip and lower back pain. The plaintiff related that in 2000, she had fallen, and her gun had hit her lower back and her right side.[2] She believed that her 1993 injury was related to her current disability. Three weeks prior to this visit, she felt a "pop" in her back and a worsening of her back pain. X-rays of her spine showed degenerative changes in her lumbar spine and a degenerative lumbar scoliosis. Noting that the previous MRI had shown a prior L5-S1 disc bulge, Dr. Lim opined that the plaintiff should under go another MRI to assess her current condition. Dr. Lim was not certain what disability was associated with her lumbar spine and recommended that the plaintiff undergo a functional capacity evaluation to document what her functional capabilities were. On June 6, 2006, Dr. Lim reviewed the MRI results. The test showed primarily L5-S1 degenerative changes. There was no nerve root compression, and no surgical intervention was deemed necessary. The plaintiff was returned to work with restrictions.

On June 13, 2006, the plaintiff was evaluated by Dr. Durudogan. The doctor noted that the plaintiff, "ever since the

---

[2]The record does not reflect that the plaintiff was involved in such an incident in 2000, but was on September 21, 1998.

motor vehicle accident in 2000 [sic],[3] has had persistent pain and problems related to this injury date." Dr. Durudogan noted that the plaintiff continued to demonstrate lower back pain with symptoms of fibromyalgia and had contracted a Bells palsy. The doctor recommended medication, behavior modification and light-duty work status on a permanent basis. The doctor also stated, "I do feel her condition is casuly [sic] related to the original injury on [the] duty date of her motor vehicle accident."

Between June 29 and August 8, 2006, the plaintiff underwent physical therapy. On August 22, 2006, she returned to Dr. Durudogan for a reevaluation of her lower back pain. The plaintiff continued to have complaints related to her lumbar spine and her right leg. She had no obvious radicular symptoms or pain with the rolling of her hip. She was considerably weak at "4/5 strength." None of her complaints went past her knee. The doctor recommended continued conservative therapy, anti-inflammatories, weight loss and physical therapy. Owing to the physical restrictions imposed, the plaintiff would be on permanent light duty at work.

On October 3, 2006, the plaintiff was examined by Dr. Durudogan to recheck her right knee, right hip and lower back. The plaintiff complained of right knee pain, pain in the lateral aspect of her hip and lower back pain. The plaintiff believed

---

[3]The record shows that the plaintiff was involved in motor vehicle accidents in 1993, 1995 and 1996.

No. 1-08-2722

that her fibromyalgia and chronic pain condition resulted from her four work-related injuries.[4] The plaintiff was to continue her home exercise program and the conservative therapy program, the anti-inflammatories medications. She was to continue on limited duty at work. On October 13, 2006, given the plaintiff's persistent pain, Dr. Durudogan recommended that she have a spinal surgical consultation. In response to an inquiry from the medical services department, the doctor states that the plaintiff's current symptoms were related to her October 30, 1993, accident.

On November 9, 2006, the plaintiff was examined by Dr. Frank M. Phillips. The plaintiff gave a history of injuries sustained in the October 30, 1993, accident and the 1996 accident in which she sustained significant direct trauma to her right side. While she did not sustain any fractures, she had significant soft tissue pathology and experienced pain in her right lower extremity ever since. Her back pain had grown progressively worse over the last three years. Her current complaints were of severe back pain with some radiation down her right thigh to her knee and right-side hip pain. An MRI of the plaintiff's lumbar spine showed loss of disc height and "signal intensity" at L5-S1 level and some modic changes at that level. There was a subtle

_____

[4]On appeal, the plaintiff does not dispute that only the October 30, 1993, and the May 10, 1996, incidents resulted in act-of-duty injuries.

9

disc bulge at L4-L5.

Dr. Phillips opined that the plaintiff had a hip joint problem as well as lower back issues. He noted that the hip problem was her dominant complaint and recommended that the hip be further evaluated. The doctor recommended addressing the hip problem first before considering any surgical intervention on her low back. The plaintiff was not to resume work until she was seen by a specialist for her hip.

On November 28, 2006, in response to an inquiry from the Chicago police department, Dr. Phillips reported that the plaintiff had a hip problem as well a lumbar problem. He categorized the plaintiff's hip problem as "likely degenerative." He opined that her lumbar problem was contributing to her symptoms. If the plaintiff wished to proceed with the surgical option, he recommended fusion or disc replacement.

On December 14, 2006, the plaintiff complained of left knee pain to Dr. Durudogan. She maintained that she had no previous knee symptoms prior to the original accident in 1993 and believed that her left knee pain was connected to posttraumatic arthritis, which, in turn, was related to her previous injury. The plaintiff further maintained that, due to pain she experienced, she was unable to adhere to the light duty the doctor recommended. Further work restrictions were to be left to Dr. Phillips to determine. The plaintiff was receiving injections for her left knee pain and was to continue with conservative

10

therapy. Dr. Durudogan recommended that the plaintiff have a functional capacity evaluation.

On January 16, 2007, Dr. Durudogan rechecked the plaintiff's left knee. The doctor recommended further injections and medications. The plaintiff was to remain off duty and follow up with Dr. Phillips.

On January 18, 2007, Dr. Phillips met with the plaintiff to resolve her work issues. She continued to complain of back pain, hip pain, and left knee pain. In his office notes, Doctor Phillips stated:

"As I have discussed previously from a spine point of view I believe she does indeed have discogenic low back pain. I believe this would certainly prevent her from working unrestricted as a police officer. In addition it would prevent prolonged sitting. Her other physicians have apparently informed Ms. Cole that due to the constellation of musculoskeletal problems she is unlikely to be able to function as [an] active duty police officer. I would certainly not disagree with this."

Dr. Durudogan examined the plaintiff on February 20 and in March, April and June of 2007 for complaints related to her left knee. According to the April 19, 2007, functional capacity evaluation report, the plaintiff demonstrated significant difficulties with standing and moderate difficulties with sitting. She had significant difficulties stooping and was

unable to position herself to crouch, stoop, squat or crawl. She had moderate difficulty with overhead and horizontal reaching. She performed poorly in the simulated gun range test. Based on the physical capabilities she did demonstrate, she would be able to function at **"the Sedentary category of work."** (Emphasis in original.)

On May 17, 2007, Dr. Wesley Y. Yapor examined the plaintiff. The plaintiff maintained that she had never fully recovered from the October 30, 1993, accident but that she remained on the police force. In "1997 [sic]," she was struck by another automobile and sustained another injury when she fell and her gun jammed into her right hip. The doctor noted that the plaintiff was obese, walked with a significant limp favoring her left leg and had limited range of motion of the lumbar spine. She complained of multiple aches and pains throughout her neck, back, lumbar spine, left leg and right hip. The year-old MRI showed advanced degenerative disc disease at the L5-S1 lever with "very irregular endplates and collapsed disc spaces," which explained the plaintiff's back pain. Dr. Yapor explained that "[c]ertainly this is the culprit for causing severe back pain, which in addition to the right hip problems and the left knee problems, is my impression that the patient is certainly not fit for doing regular police work." Given that the plaintiff had rejected the surgical option of a lumbar reconstructive procedure, Dr. Yapor opined that the plaintiff was completely and permanently disabled

12

from working as a police officer.

The plaintiff was referred to Dr. George Charuk for an independent examination. On June 21, 2007, Dr. Charuk examined the plaintiff. In his report, Dr. Charuk detailed the plaintiff's prior medical history. He diagnosed the plaintiff as suffering from degenerative disc disease at L5-S1, as evidenced by the MRI he reviewed, as well as degenerative joint disease of the right knee and the right hip, and fibromyalgia. Asked to establish whether there was a causal relationship between the plaintiff's symptoms and the accident of October 30, 1993, Dr. Charuk stated as follows:

> "With regards to the injuries that she sustained in October, 1993, it appears she had a cervical whiplash with a sprain and strain response. She was also diagnosed with lumbosacral strain as well as contusion to the left knee. She has [sic] x-rays done on November 3, 1993, which showed L5-S1 degenerative disc disease with narrowing. Findings of degenerative disc disease and narrowing do not occur in a matter of four days after the injury. Therefore, I do believe her problems preceded this motor vehicle accident of October 30, 1993."

Dr. Charuk further stated that with a work-conditioning program, the plaintiff could be returned to light duty and that she would be able to fire a weapon safely.

The plaintiff testified at the hearing that, due to the

13

injuries to her back, knees and right hip she sustained from the incidents of October 30, 1993, May 10, 1996, and September 21, 1998, she was no longer able to perform her duties as a police officer. Prior to 1993, she had not lost any time from work due to back pain. The plaintiff acknowledged that, at the time of the April 14, 2006, incident, she was on limited duty. She further acknowledged that she had been offered the option of surgery but that Dr. Yapor could not guarantee that it would resolve her problem, and it could possibly exacerbate it.

On October 29, 2007, the Board issued its written decision and order. The Board found that the plaintiff had suffered degenerative disc disease prior to the October 30, 1993, incident. Her disc disease condition was not disabling at the time, did not result from the October 30, 1993, incident, and it did not prevent the plaintiff from returning to full duty. The Board further found that the January 16, 1997, September 21, 1998, June 20, 2001, and April 11, 2006, incidents were not act-of-duty incidents as defined in the Pension Code (40 ILCS 5/5-113 (West 2006)) (the Code). Therefore any resulting injury from those incidents did not entitle the plaintiff to duty disability benefits. The Board further found that the plaintiff was entitled to an ordinary disability benefit as a result of the degenerative disc disease of the right knee and right hip and degenerative joint disease attributable to non-duty-related accidents following the October 30, 1993, incident or the

14

plaintiff's degenerative disc disease preceding the October 30, 1993, incident.

On November 14, 2007, the plaintiff filed a complaint for administrative review. The plaintiff argued that the Board's findings of fact were clearly erroneous and that its decision was against the manifest weight of the evidence. The plaintiff requested that the circuit court reverse the Board's order and award her duty disability benefits at the rate of 75% of her salary and interest pursuant to section 2 of the Interest Act (815 ILCS 205/2 (West 2006)). The circuit court found that the plaintiff was disabled as a result of duty-related injuries but that the disability resulted from a pre-existing physical defect. Concluding that the Board's decision was against the manifest weight of the evidence, the court reversed the decision and remanded the case to the Board with directions to award the plaintiff duty disability benefits at 50% of the plaintiff's salary. The plaintiff's request for prejudgment interest was denied.

The Board filed a timely notice of appeal.

Analysis

I. Jurisdiction

Although the parties have not raised an issue as to this court's jurisdiction, a reviewing court has a duty to consider sua sponte its jurisdiction over the issues raised by the parties. See Revolution Portfolio, LLC v. Beale, 341 Ill. App.

No. 1-08-2722

3d 1021, 1024-25, 793 N.E.2d 900 (2003). In response to the Board's argument that the circuit court erred in awarding the plaintiff a 50% duty disability benefit, the plaintiff argues that she is entitled to a 75% duty disability benefit. The plaintiff also argues that she was entitled to an award of prejudgment interest, which the circuit court denied. The plaintiff did not file a cross-appeal raising these issues.

In General Auto Service Station v. Maniatis, 328 Ill. App. 3d 537, 544, 765 N.E.2d 1176 (2002), the court addressed when a cross-appeal must be filed, explaining as follows:

"Findings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee. [Citation.] It follows that findings adverse to the appellee require a cross-appeal if the judgment was in part against the appellee."

The circuit court's judgment awarding her a 50% duty disability benefit instead of the 75% duty disability benefit and denying her prejudgment interest was at least in part against the plaintiff. Therefore, she was required to file a cross-appeal if she wished to raise those issues in this appeal. In the absence of a cross-appeal, this court lacks jurisdiction over those issues. See Aurora East School District v. Dover, 363 Ill. App. 3d 1048, 1059, 846 N.E.2d 623 (2006) (in the absence of a cross-appeal, the court lacked jurisdiction to consider the

16

defendant's request for additional fees, costs and prejudgment interest); but see In re K.A., 335 Ill. App. 3d 1095, 782 N.E.2d 937 (2003) (Fourth District Appellate Court found that the rule of waiver, not jurisdiction, applied to the failure to file a cross-appeal).

As we lack jurisdiction to determine if the plaintiff was entitled to a 75% duty disability benefit and prejudgment interest, we do not reach those issues.  We now turn to the issues properly before us on appeal.

## II. Duty Disability Benefit

The Board contends its decision to deny the plaintiff a duty disability benefit was not against the manifest weight of the evidence.

## A. Standard of Review

The Administrative Review Law (735 ILCS 5/3-101 et seq. (West 2006)) provides that our review extends to all questions of fact and law presented by the entire record.  735 ILCS 5/3-110 (West 2006).  We review rulings on questions of law de novo; rulings on questions of fact will be reversed only if they are against the manifest weight of the evidence.  Wade v. North Chicago Police Pension Board, 226 Ill. 2d 485, 504-05, 877 N.E.2d 1101 (2007).  We apply the clearly erroneous standard to mixed questions of law and fact.  Marconi v. Chicago Heights Police Pension Board, 225 Ill. 2d 497, 532, 870 N.E.2d 273 (2006).

17

### B. Applicable Principles

In administrative review cases, we review the decision of the administrative agency, not the decision of the circuit court. Marconi, 225 Ill. 2d at 531. Whether the evidence of record supports the Board's denial of the plaintiff's application for a disability pension is a question of fact to which this court applies the manifest weight standard. Wade, 226 Ill. 2d at 505. "'An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.'" Wade, 226 Ill. 2d at 504-05, quoting Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992). Under any standard of review, the burden of proof is on the plaintiff, and the failure to sustain that burden will result in denial of the relief sought. Wade, 226 Ill. 2d at 505.

### C. Discussion

In this case, the Board denied the plaintiff a duty disability pension as provided for in section 5-154 of the Code. Section 5-154 provides in pertinent part as follows:

"(a) An active policeman who becomes disabled on or after the effective date as the result of injury incurred on or after such date in the performance of an act of duty, has a right to receive duty disability benefit during any period of such disability for which he does not have a right to receive salary, equal to 75% of his salary, as salary is

18

defined in this Article, at the time the disability is allowed ***." 40 ILCS 5/5-154(a) (West 2006).

Instead the Board awarded the plaintiff an ordinary disability benefit pursuant to section 5-155 of the Code. Section 5-155 provides in pertinent part as follows:

"A policeman less than age 63 who becomes disabled after the effective date as the result of any cause other than injury incurred in the performance of an act of duty, shall receive ordinary disability benefit during any period or periods of disability exceeding 30 days for which he does not have a right to receive any part of his salary.

* * *

Ordinary disability benefit shall be 50% of the policeman's salary, as salary is defined in this Article, at the time disability occurs." 40 ILCS 5/5-155 (West 2006).

In reversing the decision of the Board, the circuit court found that the plaintiff was "disabled as a result of injuries incurred in the performance of active duty, however said disability resulted from a physical defect which existed at the time the injury was sustained." The court ordered that the Board award the plaintiff a duty disability benefit pursuant to section 5-154(a)(i), which provides in pertinent part as follows:

"If the disability resulted from any physical defect or mental disorder or any disease which existed at the time the injury was sustained, or if the disability is less than 50%

19

of total disability for any service of a remunerative
character, the duty disability benefit shall be 50% of
salary as defined in this Article."  40 ILCS 5/5-154(a)(i)
(West 2006).

The duty disability benefit is payable until the police officer reaches age 63 or is retired by operation of law.  40 ILCS 5/5-154(c) (West 2006).  The ordinary disability benefit also ceases when the police officer reaches age 63 or retires.  40 ILCS 5/5-155 (West 2006).  However, in addition, section 5-155 further provides that the payment of the ordinary disability benefit "shall not exceed, in the aggregate, throughout the total service of the policeman, a period equal to one-fourth of the service rendered to the city prior to the time he became disabled, nor more than 5 years."  40 ILCS 5/5-155 (West 2006).

When reviewing the agency's decision, a reviewing court may not reverse administrative findings merely because an opposite conclusion is reasonable or because the court might have ruled differently.  Marconi, 225 Ill. 2d at 534.  In our examination of an administrative agency's factual findings, we do not weigh the evidence or substitute our judgment for that of the agency.  Marconi, 225 Ill. 2d at 534.  Where the record contains evidence to support the agency's decision, we will affirm.  Marconi, 225 Ill. 2d at 534.

It is undisputed that in the October 30, 1993, incident, the plaintiff sustained injuries while performing an "act of duty" as

20

No. 1-08-2722

defined under the Code.[5]  See 40 ILCS 5/5-113 (West 2006).
It is also undisputed that the plaintiff is disabled.

In Samuels v. Retirement Board of the Policemen's Annuity &
Benefit Fund, 289 Ill. App. 3d 651, 682 N.E.2d 276 (1997), this
court construed section 5-154 as providing benefits in two
separate instances: "(1) where a disability occurs as a result of
(is caused by) an on-duty injury; and (2) where a disability
results from (stems from) a preexisting condition as opposed to
being caused by the injury."  (Emphasis in original.)  Samuels,
289 Ill. App. 3d at 661.  The court further explained as follows:

"In the first instance, the duty disability benefit is 75%
of the officer's salary.  In the second instance, where the
disability 'resulted from any physical defect or mental
disorder or any disease which existed at the time the injury
was sustained,' the duty disability is 50% of the officer's
salary.  (Emphasis added.)  [Citation.]  The statute does
not include language stating that, even if an officer has a
physical defect, mental disorder or disease prior to the
subsequent on-duty injury, the officer is entitled to a duty
disability pension of 75% of salary if 'but for' the on-duty
injury the disability would not exist.  Instead, under the

_____

[5]In her application for benefits, the plaintiff did not
include the May 10, 1996, incident as a basis for an award of
benefits.  However, the Board does not dispute that May 10, 1996,
was also an act-of-duty incident.

21

statute, the officer will be given a duty disability pension of 50% of his salary if the disability 'resulted from' the preexisting condition, notwithstanding the effect the on-going injury may have had on the preexisting condition." Samuels, 289 Ill. App. 3d at 661-62, quoting 40 ILCS 5/5-154 (West Supp. 1995).

In this case, if the plaintiff's disability resulted from a preexisting condition, which existed at the time the act-of-duty injury was sustained, she is entitled to a duty disability benefit at 50% of her salary rate.

In Samuels, the plaintiff sustained act-of-duty injuries to her neck and the lower area of her right shoulder. She was diagnosed with a herniated disc. It was determined that she also suffered from degenerative disc disease. The plaintiff was placed on medical leave and received treatment but never returned to her duties as a police officer. At the second hearing on her application for benefits, there was conflicting medical evidence as to whether the plaintiff's inability to work was related to her on-duty injuries or her degenerative disc disease. The doctor who examined her at the Board's request testified that he did not find a herniated disc, but he concluded that the plaintiff had degenerative disc disease which was present on the date of her on-duty injury. Therefore, the on-duty injury could not have caused the disc disease. The doctor opined that the plaintiff could not return to work because of the degenerative

22

disc disease. Samuels, 289 Ill. App. 3d at 659.

The Board made the following findings: (1) the plaintiff had sustained an injury during an act of duty, (2) her current disability, the degenerative disc disease, prevented her from returning to work, and (3) the plaintiff's inability to return to work was the result of a physical defect, the degenerative disc disease, that existed at the time of her on-duty injury was sustained. The Board awarded the plaintiff a duty disability pension in the amount of 50% of her base salary. Samuels, 289 Ill. App. 3d at 659-60. The plaintiff filed a complaint for administrative review. The circuit court reversed the Board's decision and remanded the case to the Board. The court framed the issue before it as whether or not the record reflected that the injury was the result of a preexisting condition. In light of the evidence that the plaintiff went from being an active person to a disabled person following her injury, it concluded that the Board's finding was not supported by the evidence. Samuels, 289 Ill. App. 3d at 660.

On review before this court, the parties disputed the meaning of section 5-154. The Board maintained that if a police officer suffered an act-of-duty injury and the injury exacerbated or otherwise made active a preexisting condition, the officer is entitled to the 50% benefit. The plaintiff maintained that the "resulting from" language of section 5-154 implied causation and required the Board to consider whether, "'but for' the injury,

23

[her] disability would not have occurred." Samuels, 289 Ill. App. 3d at 661.

This court held that the circuit court erred in reversing the Board's decision awarding the plaintiff a duty disability benefit at 50% of her salary. The court found that competent evidence supported the Board's decision that the plaintiff's disability resulted from preexisting degenerative disc disease. Therefore, the circuit court erred in reversing the Board's decision as against the manifest weight of the evidence. Samuels, 289 Ill. App. 3d at 662-63.

As in Samuels, in the present case, there was evidence that the plaintiff showed signs of degenerative disc disease at the time she suffered her act-of-duty injuries. Unlike the plaintiff in Samuels, the plaintiff here returned to full duty after she was injured in the act-of-duty incidents of October 30, 1993, and May 10, 1996. However, as the court in Samuels stated, "the officer will be given a duty disability pension of 50% of his salary if the disability 'resulted from' the preexisting condition, notwithstanding the effect the on-duty injury may have had on the preexisting condition." Samuels, 289 Ill. App. 3d at 662.

The decision in Flaherty v. Retirement Board of the Policemen's Annuity & Benefit Fund, 311 Ill. App. 3d 62, 724 N.E.2d 145 (1999), does not require a different result. In Flaherty, the plaintiff sustained duty-related injuries in 1979

24

and 1985. In 1989, he was again injured in a duty-related accident when his motorcycle was struck from behind, and he was treated for back sprain. He also suffered back injuries as the result of an off-duty car accident in 1980 and a fall in 1984. The plaintiff was able to return to full duty following each of these incidents. After the July 1989, accident, he did not suffer any further back-related injuries. Then, in April 1995, while getting out of bed, he felt a sharp pain and collapsed a short while later with pain radiating from his left lower back down his left leg. There was evidence that the plaintiff had been suffering from degenerative disc disease prior to 1995. The Board granted the plaintiff an ordinary disability benefit at 50% of his salary rather than the 75% duty disability benefit the plaintiff sought. The circuit court affirmed the Board's decision, and the plaintiff appealed.

This court affirmed the decision of the Board. The court determined that the Board's decision to award the ordinary disability benefit was supported by the record as none of the doctors who testified could state with certainty that the plaintiff's herniated disc was caused by a series of on-duty accidents culminating in the July 1989, incident. Therefore, the court concluded that the Board's decision was not against the manifest weight of the evidence. Flaherty, 311 Ill. App. 3d at 66.

Flaherty is distinguishable from the present case. In

25

No. 1-08-2722

Flaherty, while there was evidence that the plaintiff had degenerative disc disease, the Board found that the plaintiff's inability to work was due to his 1995 off-duty incident, not a preexisting condition.  Therefore, no issue as to whether the plaintiff in Flaherty was entitled to a 50% duty disability benefit arose in that case.  In the present case, the Board's decision denied the plaintiff any duty disability benefit. However, the record in this case clearly establishes that the plaintiff's disability resulted from a preexisting condition, entitling her to a 50% duty disability benefit.  As the opposite conclusion is clearly evident, the Board's decision is against the manifest weight of the evidence.

The Board contends that the circuit court lacked the authority under the Administrative Review Law to order it to award the plaintiff duty disability benefits.  We disagree.

Under the Administrative Review Law, the circuit court has the power:

> "(5) to affirm or reverse the decision in whole or in part;
>
>   (6) where a hearing has been held by the agency, to reverse and remand the decision in whole or in part, and, in that case, to state the questions requiring further hearing or proceedings and to give such other instructions as may be proper."  735 ILCS 5/3-111 (West 2006).

The circuit court did not exceed its authority here.  It

26

remanded the case with directions to award the plaintiff the 50% duty disability benefit to which she was clearly entitled under the record in this case. The Board's reliance on Mitchem v. Cook County Sheriff's Merit Board, 196 Ill. App. 3d 528, 554 N.E.2d 331 (1990), is misplaced. There the appellate court found the circuit court had exceeded its powers by awarding back pay. The court was limited to the record before it, and the award of back pay and benefits required the taking of additional evidence. Mitchem, 196 Ill. App. 3d at 534. In the present case, the circuit court's determination that the plaintiff was entitled to the 50% duty disability benefit was based on the record before it.

The judgment of the circuit court is affirmed.

Affirmed.

GARCIA and PATTI, JJ., concur.