2022 IL App (1st) 210483
Opinion filed May 5, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PATRICK KELLY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CH 13045 |
| | ) | |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) | Honorable |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) | Sanjay Tailor |
| CHICAGO, | ) | and |
| | ) | Honorable |
| Defendant-Appellee. | ) | Cecilia Horan, |
| | ) | Judges, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Former Chicago police officer Patrick Kelly applied for a duty disability benefit, claiming that he became unable to work about three years after an incident in which he responded to a domestic disturbance and shot and killed the suspect, who allegedly had attacked Kelly with a knife. After a hearing, the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) denied Kelly's application. Kelly sought administrative review, and the

circuit court reversed in part and affirmed in part the Board's decision. Specifically, the circuit court held that Kelly was entitled to ordinary disability benefits but not duty disability benefits. The circuit court also denied Kelly's petition for attorney fees based on lack of jurisdiction.

¶ 2 On appeal, Kelly argues that he is entitled to duty disability benefits, not ordinary disability benefits, because his disabling posttraumatic stress disorder (PTSD) resulted directly from an on-duty shooting incident and was not a result of any preexisting mental disease or disorder. Kelly also argues that the circuit court erred by denying his petition for attorney fees.

¶ 3 For the reasons that follow, we affirm the judgment of the circuit court that reversed the Board's decision to deny Kelly ordinary disability benefits and affirmed the Board's decision to deny Kelly duty disability benefits. We also reverse the circuit court's order denying Kelly's petition for attorney fees and remand this matter to the circuit court for a determination of the amount of Kelly's attorney fees.[1]

¶ 4                                    I. BACKGROUND

¶ 5 Kelly was born in 1980 and had worked for the Chicago Police Department (Department) since January 26, 2004. On July 27, 2019, the Board held a hearing on Kelly's application for duty disability benefits under Article V of the Illinois Pension Code (Pension Code) (40 ILCS 5/5-101 *et seq.* (West 2020)). Kelly argued that he eventually became unable to continue in his position due to an incident that occurred while he was on duty on April 7, 2014, from which he claimed to have developed PTSD. The following information comes from the evidence presented at the hearing held by the Board on Kelly's application for duty disability benefits.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6       In 2005, Kelly was involved in an off-duty domestic disturbance with his ex-girlfriend. He claimed that she attacked him, so he left but she somehow sustained a head injury. She filed a police report against Kelly. Then, in 2006, Kelly was involved in an off-duty altercation with his ex-girlfriend's brother, in which the brother tried to hit Kelly with a wine bottle and Kelly threw and hit the brother with a remote control. Kelly was arrested but the brother did not press charges. Kelly received a three-month suspension, followed by a psychological evaluation and consultation with Dr. Teresa Finn in 2006. Afterward, Kelly was found fit for duty and returned to his position with the Department.

¶ 7       In January 2010, in an off-duty occurrence at Kelly's home, his weapon was used in a shooting incident involving his friend, Michael LaPorta, who sustained permanent disabling injuries after he was shot in his head. Kelly claimed that LaPorta shot himself in a suicide attempt. Thereafter, LaPorta filed a civil lawsuit against the City of Chicago (City).

¶ 8       On April 7, 2014, the date of the incident at issue in this appeal, Kelly was on duty, responding to a domestic disturbance, in which a distraught man held a knife and was about to hurt himself. Kelly claimed the man attacked him with the knife, causing Kelly to shoot and kill the man. Between the 2010 incident and this 2014 incident, Kelly had worked full duty. Kelly and Dr. Finn testified that Kelly consulted her in September 2014. In 2016, Kelly told the Department that he could no longer handle full duty and asked to be taken off street duty. The Department granted his request. He also began having weekly sessions with Department psychologist Dr. Robert Sobo.

¶ 9      In late October 2017, the jury in LaPorta's civil lawsuit found that Kelly shot LaPorta and awarded LaPorta a $44.7 million verdict against the City.[2] Kelly took a medical leave for stress on October 31, 2017. On November 1, 2017, he filed with the Department an injury on-duty report, claiming that the April 7, 2014, incident caused him to suffer PTSD and he was now unable to work with the Department.

¶ 10     On November 21, 2018, one day before he would exhaust his Department medical leave, Kelly filed with the Board an application seeking a duty disability award, stating that he was disabled due to PTSD, which was caused by the April 7, 2014, act of duty incident.

¶ 11     At the July 2019 evidentiary hearing before the Board, Kelly testified that the aforementioned 2005, 2006, and 2010 off-duty events caused him to be sad, worried about dealing with legal and media issues and possibly losing his job, and worried about LaPorta's condition. However, Kelly testified that he did not suffer significant distress or impairment in his social, occupational, or other functioning. After the April 7, 2014, incident, he continued to work but was very nervous, had difficulty performing police duties, and was afraid of hurting someone with his gun. According to Kelly, the friends of the man Kelly killed in the 2014 incident were threatening Kelly and his family members. Eventually Kelly started having severe problems, such as waking up screaming and shaking at night. Around 2016, he "couldn't handle it anymore" and asked a supervisor to be relieved of street duty. Kelly decided to file his disability claim in 2018 because his emotional state was getting worse.

---

[2]This court notes, however, that in February 2021, the federal appellate court overturned that judgment, finding that the City was not subject to liability because Kelly was not acting as a Chicago police officer but as a private citizen. *First Midwest Bank v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021).

¶ 12    Kelly's expert witness, Dr. Teresa Finn, is a board-certified psychologist and neuropsychologist with a doctorate in education. She has performed neuropsychological evaluations for PTSD and traumatic brain injury for 25 years. She had treated several police officers and about 300 veterans for PTSD. She reviewed Kelly's 2006, 2007, and 2010 fitness for duty mental evaluations and the report of the Board's expert but did not review Kelly's medical records from his primary care physician. Dr. Finn was currently treating Kelly and first saw him in 2006, following his altercation with his ex-girlfriend and her brother.

¶ 13    As part of Dr. Finn's 2006 examination, she evaluated Kelly for his psychological fitness for duty, diagnosed him with adjustment disorder "for insurance purposes," and concluded that he was fit for duty. At that time, Dr. Finn did not diagnose Kelly with any psychological disorder. She next saw Kelly in September 2014 and learned about the 2010 off-duty shooting of LaPorta and the April 7, 2014, on-duty incident. Kelly told Dr. Finn that he felt like he was "losing it" and wanted treatment. Dr. Finn diagnosed Kelly with PTSD based only on the April 7, 2014, incident. Dr. Finn testified that Kelly did not report exhibiting any PTSD symptoms regarding the 2010 LaPorta incident, *i.e.*, persistent avoidance of stimuli associated with that event, inability to recall important aspects of the event, persistent distorted cognition about the cause or consequences of that event, persistent and exaggerated negative beliefs about himself or others, persistent negative emotional state, marked diminished interest and participation in significant activities, feelings of detachment or estrangement from others, and persistent inability to experience positive emotions. Although Kelly had experienced stressors, especially the 2010 LaPorta incident, those stressors were risk factors and did not stop him from working.

¶ 14    Dr. Finn testified that Kelly's PTSD was the direct result of the April 7, 2014, line of duty incident and that the incident had disabled him from being a police officer. Dr. Finn explained that Kelly was able to work for three years after the 2014 incident because he was medicated by his psychiatrist. However, Kelly's disruptive sleep since the 2014 incident eventually accumulated to the point that he was unable to function. Contrary to the Board's expert, Dr. Finn opined that the April 7, 2014, incident alone resulted in Kelly's disabling PTSD, generalized anxiety, panic disorder, and agoraphobia, which were not an exacerbation of any preexisting condition. She also opined that Kelly could not work at all due to PTSD, anxiety, and depression.

¶ 15    Dr. Finn testified that none of the medical records she reviewed indicated that Kelly suffered from any preexisting psychological conditions. She admitted that she did not have her reports from 2014, stating that she did not retain her notes or reports because she did not perform any formal testing. She added that she shredded her reports after seven years. Based on her review of Kelly's fitness for duty evaluations and her recollection of her visits with Kelly in 2014, Dr. Finn testified that she had diagnosed him with PTSD in 2014.

¶ 16    The Board's expert witness, Alan R. Hirsch, M.D, is a neurologist and psychiatrist with 30 years in practice. He is board certified in psychiatry, neurology, addiction psychiatry, geriatric psychology, brain trauma, and behavior neurology. He frequently treated police officers and conducted independent evaluations of police officers a few times a year. He has written articles about PTSD. He conducted a consultative exam on Kelly in January 2019 and diagnosed him with PTSD, panic disorder, and agoraphobia. In his reports and his testimony, Dr. Hirsch described in detail the events in Kelly's life that formed the basis of Dr. Hirsch's medical opinion that the April 7, 2014, incident was not the only cause of Kelly's disability. Rather, Dr. Hirsch opined that the

2014 incident exacerbated Kelly's preexisting problems that stemmed from earlier traumatic incidents, including the 2010 LaPorta incident and the earlier altercations with Kelly's ex-girlfriend and her brother.

¶ 17    Dr. Hirsch opined that the 2014 incident alone was not the cause of Kelly's disability; it was only one component of his diagnoses as it related to his underlying psychological problems and exacerbated his preexisting problems, causing the PTSD, panic disorder and agoraphobia that currently rendered him unable to return to his Department assigned position. Dr. Hirsch testified that the many traumatic stressful events, taken together, caused an impact and induced Kelly to be in his current PTSD state and adversely impacted his ability to function. Dr. Hirsch stated that if Kelly underwent a more appropriate treatment protocol, which would entail a massive overhaul of his medication management, he might ultimately be able to return to work; however, his current psychological issues prevented him from returning to active service with the Department.

¶ 18    Dr. Hirsch acknowledged that he did not see Kelly prior to January 2019. Nevertheless, Dr. Hirsch could testify to a reasonable degree of psychiatric certainty that Kelly had psychological conditions prior to the April 7, 2014, incident because Dr. Hirsch relied on the history Kelly provided during the consultation and the information contained in Kelly's old medical records to make and confirm a diagnosis. Dr. Hirsch testified that all the incidents of 2005, 2006, 2010, and 2014 combined together to cause Kelly's problems. According to Dr. Hirsch, each of those different traumatic events seemed to have contributed to the PTSD, from which Kelly currently suffered. Moreover, Kelly reported to Dr. Hirsch that, since college, Kelly has had anxiety every day, panic attacks either every day or every other day, and the effects of depression and manic periods lasting two days. Based on the history Kelly gave Dr. Hirsch, Kelly had symptoms that

allowed Dr. Hirsch to conclude that Kelly had depression prior to the April 7, 2014, incident and was likely suffering from generalized anxiety disorder and depression since college. In his supplemental report, Dr. Hirsch indicated that Kelly's tests showed he has some traits consistent with paranoia, acute delusional disorder, paranoid personality disorder, and schizophrenic disorder.

¶ 19    The Department's medical records establish that Kelly took a leave for PTSD from October 30, 2017, to March 18, 2018, and this was the only leave he took related to stress. From May 27 to 28, 2005, he was off work due to an infection. From May 22 to 29, 2006, he was off work due to an injured back. After the 2010 LaPorta incident, Kelly was furloughed from April to May, 2010; no leave for stress was noted. From November 2012 to February 2013, Kelly was on leave due to shoulder surgery. From December 8 to 9, 2013, he was off work for sickness.

¶ 20    On October 31, 2019, the Board entered a decision, finding that Kelly and his testimony were not credible. The Board found that Dr. Finn's testimony was evasive and not credible, especially regarding her attempt to associate her PTSD diagnosis to the single April 7, 2014, incident. Regarding Dr. Hirsch, the Board found that some questions by Kelly's counsel regarding Dr. Hirsch's outside business ventures "may have an effect on his business and his character," but none of the questions disputed any of Dr. Hirsch's testimony or reports regarding Kelly.

¶ 21    The Board found that Kelly failed to meet his burden to establish that his alleged PTSD was causally related to the April 7, 2014, incident and thus denied his application for duty disability benefits. Specifically, the Board found that the April 2014 incident was not the cause of Kelly's PTSD because (1) he did not file an injury on-duty report about the April 7, 2014, incident until November 1, 2017, which was days after a federal jury awarded LaPorta a $44.7 million award

regarding the 2010 incident, (2) Kelly did not seek or take a medical leave citing to the April 7, 2014, incident until October 30, 2017, (3) Kelly's medical records reflected a "troubled past of traumatic events"—*i.e.*, the 2005, 2006, and 2010 incidents—and prior Department "psychological evaluations, all of which contributed to Kelly's long-standing psychological problems," and (4) Kelly produced no medical reports of consultations with Dr. Finn for the period following the April 7, 2014, incident, except for reports dated 2018 and 2019.

¶ 22 The Board also found that Kelly was not disabled and, thus, was not entitled to ordinary disability benefits. The Board acknowledged that both Drs. Finn and Hirsch opined that Kelly should not be returned to police work. However, the Board was "troubled by Dr. Hirsch's outside business dealings and credibility concerns" and had found that Dr. Finn's testimony was not credible. Contrary to the doctors' opinions that Kelly could not return to police service, the Board found "from the totality of the evidence" that Kelly was "no more troubled or disabled now than" he had been since at least 2006, during which time he had been able to work with the Department. The Board also found that Kelly's fear of being discharged from the Department as a result of the LaPorta jury award motivated Kelly to seek disability benefits. The Board stated that "Kelly is able to perform an assigned task in the [Department] as he has done over the past years and therefore, he is not disabled as disability is defined in the Act."

¶ 23 Kelly filed a complaint for administrative review. In October 2020, the circuit court affirmed the Board's decision denying Kelly duty disability benefits, finding that decision was not against the manifest weight of the evidence. However, the circuit court reversed the Board's decision that Kelly was not disabled and not entitled to ordinary disability benefits, finding that decision to be arbitrary and capricious because both Drs. Finn and Hirsch had concluded that Kelly

was disabled and no expert testimony or evidence was presented to show that Kelly was not disabled. Accordingly, the circuit court ordered the Board to award Kelly ordinary disability benefits retroactive to the date he exhausted his medical leave with the Department.

¶ 24 Kelly moved the circuit court to reconsider, arguing that if the court found that his disability resulted from the aggravation of preexisting conditions, then he was entitled to a minimum award of 50% duty disability benefits, not 50% ordinary disability benefits. In November 2020, the court denied Kelly's motion to reconsider.

¶ 25 In April 2021, the court denied Kelly's petition for attorney fees, ruling that the court lacked jurisdiction because section 5-189 of the Pension Code (*id.* § 5-189) gave the Board exclusive original jurisdiction in all matters relating to or affecting the fund.

¶ 26 Kelly appealed.

¶ 27                                        II. ANALYSIS

¶ 28 On appeal, Kelly argues that (1) the Board erred by determining that he was not disabled and denying his application for duty disability benefits and (2) the circuit court erred by denying his petition for attorney fees.

¶ 29 The Administrative Review Law mandates that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2020). Accordingly, it is not a court's function on administrative review to reweigh evidence or to make an independent determination of the facts. *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 244 (2009); *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

¶ 30    The applicable standard of review depends upon whether the question is one of fact, one of law, or a mixed question of fact and law. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). Although the Board's findings of fact are given considerable deference, they are, nonetheless, subject to reversal if they are against the manifest weight of the evidence. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471-72 (2005). The Board's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson*, 153 Ill. 2d at 88. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. *Id.* If the record contains evidence that supports the agency's decision, it should be upheld. *Id.*

¶ 31    Questions of law, however, are reviewed *de novo*, while mixed questions of law and fact are reviewed under the clearly erroneous standard. *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 337 (2009); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). An administrative decision is clearly erroneous where the reviewing court is left with the definite and firm conviction that a mistake has been made. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577-78 (2005). The plaintiff in an administrative hearing bears the burden of proof, and relief will be denied if the plaintiff fails to sustain that burden. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007).

¶ 32    The question of whether the evidence of record supports the Board's denial of plaintiff's application for a disability pension is a question of fact, and, as such, the manifest weight standard

of review applies. *Id.* However, on appeal, the Board questions whether Kelly is disabled within the meaning of the Pension Code. To the extent that this issue requires us to interpret the meaning of the Pension Code provision, it is a mixed question of law and fact, subject to the clearly erroneous standard.

¶ 33 "Courts liberally construe pension laws in favor of those to be benefitted. [Citations] However: *** 'if the legislative intention is obvious from the language used[,] that intention must be made effective, and the judiciary will not be warranted in giving the act a meaning not expressed in it.' [Citation.]" *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 545 (1997).

¶ 34                              A. Pension Code Disability Benefits

¶ 35 Under the Pension Code, an ordinary disability benefit will be granted under the following circumstances:

> "A policeman less than age 63 who becomes disabled after the effective date *as the result of any cause other than injury incurred in the performance of an act of duty*, shall receive ordinary disability benefit during any period or periods of disability exceeding 30 days, for which he does not have a right to receive any part of his salary." (Emphasis added.) 40 ILCS 5/5-155 (West 2020).

The amount of an ordinary disability benefit is 50% of the officer's salary. *Id.*

¶ 36 Conversely, a duty disability benefit is granted under the following circumstances:

> "(a) An active policeman who becomes disabled on or after the effective date *as the result of injury incurred* on or after such date *in the performance of an act of duty*, has a right to receive duty disability benefit during any period of such disability for which he

does not have a right to receive salary, equal to 75% of his salary, as salary is defined in this Article, at the time the disability is allowed; *** *provided, however, that:*

> (i) *If the disability resulted from any* physical defect or *mental disorder* or any disease *which existed at the time the injury was sustained*, or if the disability is less than 50% of total disability for any service of a remunerative character, *the duty disability benefit shall be 50% of salary* as defined in this Article." (Emphases added.) *Id.* § 5-154(a).

¶ 37 An "act of duty" is

"[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." *Id.* § 5-113.

¶ 38                                    1. Disability

¶ 39 The Board concluded that Kelly was not disabled within the meaning of the Pension Code, was no more disabled currently than he had been since at least 2006 and was able to perform an assigned task in the Department as he had done over the past couple of years. In support of this determination, the Board found that (1) Kelly and his expert, Dr. Finn, were not credible, (2) Dr. Hirsch also raised some credibility concerns, and (3) Kelly's fear of being discharged from the Department as a result of the 2017 LaPorta jury award motivated Kelly to seek disability benefits.

¶ 40    Section 5-115 of the Pension Code (*id.* § 5-115) defines the term "disability" as: "A condition of physical or mental incapacity to perform any assigned duty or duties in the police service." The Board's determination that Kelly was not disabled ignores the fact that no other expert contradicted the unanimous testimony of both Drs. Finn and Hirsch that Kelly is disabled and not fit to return to full active duty. The Board's decision that Kelly is not disabled is against the manifest weight of the evidence because there is no expert testimony or evidence that Kelly is not disabled. See *Chase v. Department of Professional Regulation*, 242 Ill. App. 3d 279, 286 (1993) (where an agency makes factual determinations involving technical concepts unique to its expertise, expert testimony must be introduced to support the decision); *Farney v. Anderson*, 56 Ill. App. 3d 677, 682-83 (1978) (an agency that substitutes its subjective analysis in place of expert opinions fatally taints the proceedings, necessitating reversal of its decision).

¶ 41    Based on all of the evidence that was before the Board, the fact that Kelly was able to work for the department in a limited duty position for a period of time does not provide sufficient support for the Board's decision to deny Kelly disability benefits. As a result, we find that the Board's determination that Kelly was not disabled is against the manifest weight of the evidence.

¶ 42    Therefore, we agree with the circuit court that the Board's decision to deny Kelly disability benefits because he had been able to work for a period of time in a capacity that was not a full duty, active service position is against the manifest weight of the evidence.

¶ 43                                    2. Act of Duty

¶ 44    An officer who is found to be disabled may be awarded a duty disability benefit if the disability resulted from either an injury incurred in the performance of an act of duty or any mental

disorder that existed at the time the injury was sustained. Otherwise, the disabled officer may be awarded an ordinary disability benefit. See 40 ILCS 5/5-154, 5-155 (West 2020).

¶ 45    The Illinois Supreme Court has agreed with the following principles that have developed in applying the Pension Code to claims of duty-related stress:

> "In examining claims of duty-related stress ***, courts have required that plaintiff-police officers demonstrate their disabilities are the result of a specific, identifiable act of duty unique to police work. [Citations.] Conversely, where the disability is traceable only to the general nature of being a police officer and not to a specific act of police service, line-of-duty disability pensions are denied. [Citation.] Similarly, where the causes of the stress are not unique to police work, line-of-duty disability pensions are also denied. [Citations.] These general rules are an outgrowth of judicial attempts to define and apply the term act of duty to cases involving claimed psychological disabilities. [Citation.]

> Courts reason that civilians regularly suffer stress in many aspects of their jobs. Thus, to be eligible for a line-of-duty disability pension based on stress, a police officer's psychological disability must result from a special risk, not ordinarily assumed by a citizen in the ordinary walks of life." (Internal quotation marks omitted). *Robbins*, 177 Ill. 2d at 542.

¶ 46    In *Robbins*, the Illinois Supreme Court rejected the appellate court's conclusion to award an officer a line-of-duty disability pension because his debilitating mental condition was caused, at least in part, by his on-duty functions as a police officer. *Id.* at 543. Specifically, our supreme court rejected as circuitous the appellate court's analysis that focused on the words "incur" and

"resulting from" being equivalent to the word "cause"; reasoned that the tort concept of proximate cause allows for more than one cause of an injury; and concluded that a disabled police officer should not be deprived of a line-of-duty disability pension as long as one of the causes of the disability resulted from an act of duty. *Id.*

¶ 47 Instead of properly applying the plain language of the Pension Code, the appellate court in *Robbins* erroneously applied the common law concepts of negligence and proximate cause and thereby erroneously awarded the officer a line-of-duty disability pension based on generalized police stress of multiple origins that caused his disability. *Id.* The supreme court stated:

"[A] court should not attempt to read a statute other than in the manner in which it was written. In applying plain and unambiguous language, it is not necessary for a court to search for any subtle or not readily apparent intention of the legislature. [Citations.]

*** [T]his is a statutory action with explicit requirements and not a common law negligence action. The appellate court had to look no further than the plain language of the Pension Code, which requires that the line-of-duty disability result from an act of duty." (Internal quotation marks omitted.) *Id.* at 543-44.

¶ 48 The issue here is the source of the stress. Kelly claims that his mental disability resulted directly from the April 7, 2014, incident, which was an act of duty. In the alternative, he argues that the April 7, 2014, act of duty incident exacerbated his preexisting mental disorder.

¶ 49 The Board, however, decided that Kelly was not disabled by an injury that occurred in the performance of an act of duty. Specifically, the Board found that Kelly failed to meet his burden to prove that the April 7, 2014, act of duty incident was the cause of his PTSD disability because (1) he did not file an on-duty injury report until three and a half years after that 2014 incident,

(2) he did not seek or take a medical leave citing the 2014 incident until October 30, 2017, (3) his troubled past of traumatic off-duty events contributed to his longstanding psychological problems, and (4) the medical records indicate that he did not consult with Dr. Finn following the 2014 incident until 2018. The Board's decision turns on a question of fact—whether Kelly was injured in the performance of an act of duty—and is reviewed under the manifest weight of the evidence standard. *Wade*, 226 Ill. 2d at 504-05.

¶ 50    The Board's psychologist, Dr. Hirsch, opined that the April 7, 2014, incident was not the only cause of Kelly's disability; rather, the 2014 incident exacerbated Kelly's preexisting psychological problems that stemmed from earlier traumatic off-duty incidents, including the 2010 LaPorta incident and the 2005 and 2006 altercations with Kelly's ex-girlfriend and her brother. The conclusions of Dr. Hirsch do not conflict with the Board's conclusion that Kelly's PTSD was not connected to any specific act of Kelly as a police officer because Kelly failed to meet his burden to show that his PTSD disability resulted from the performance of the April 7, 2014, act of duty.

¶ 51    The evidence in the record supports the Board's determination that the injury Kelly experienced was not in his performance of an act of police duty. He was on duty, responding to a domestic disturbance call on April 7, 2014, when he shot and killed a man, whom Kelly claimed tried to attack him with a knife. Kelly, however, never testified that he experienced trauma or fear during that event, immediately afterward, or within the following several months. Furthermore, although Kelly claimed to visit Dr. Finn for therapeutic help in September 2014, no medical records confirmed that visit. Dr. Finn's testimony that she saw and diagnosed Kelly with PTSD at

that time was not credible based upon the lack of records, particularly since she testified that she kept all medical records for seven years.

¶ 52    The Board dismissed Kelly's testimony as not credible because he never referred to the April 7, 2014, incident as a cause of his alleged PTSD until three and a half years after the incident, when he was facing media scrutiny and legal issues due to the jury's 2017 verdict in the LaPorta civil case. Furthermore, there is no indication that Kelly's history of psychological problems was exacerbated by the April 7, 2014, incident because he was able to continue working as a full duty officer until at least 2016, indicating that his psychological issues were under control. Moreover, the fact that Kelly may have been particularly susceptible to PTSD does not mandate a conclusion that the April 7, 2014, incident either was the cause of his current condition or exacerbated his preexisting psychological problems to the extent to render him disabled. Although Dr. Hirsch testified that Kelly's April 7, 2014, incident, when taken in combination with the other off-duty incidents, exacerbated his preexisting psychological conditions, Dr. Hirsch did not opine that Kelly's PTSD disability occurred during the April 7, 2014, act of duty.

¶ 53    An officer's entitlement to duty disability benefits depends on whether the officer's injury leading to a disability occurred during an act of duty. Ordinary job stressors, such as frustration over lack of career advancement, do not generally qualify an officer for a duty disability benefit. See *Wall v. Police Pension Board*, 178 Ill. App. 3d 438 (1988). And "[c]ourts deny line-of-duty disability pensions where the disability is traceable only to the 'general nature of being a police officer' and not to a specific act of police service, or where the causes of the stress are not unique to police work." (Internal quotation marks omitted.) *Village of Stickney v. Board of Trustees of the Police Pension Fund*, 363 Ill. App. 3d 58, 62 (2005) (quoting *Robbins*, 177 Ill. 2d at 542).

¶ 54    Although Kelly was indisputably performing a police function on April 7, 2014—and an inherently dangerous one—the Board denied him a duty disability benefit because the Board did not believe that the April 7, 2014, incident caused his PTSD or contributed to his preexisting psychological problems to cause him to suffer PTSD in 2014. Rather, the Board believed that Kelly's stress about the LaPorta jury verdict in late 2017, the possibility that he would lose his career, and the media scrutiny caused Kelly to file for disability benefits. But such stressors are not unique to police work and can occur in the context of an ordinary job.

¶ 55    In *Robbins*, our supreme court affirmed the Board's denial of a line-of-duty disability pension, reversing the appellate court, where the officer was deemed unfit for duty after experiencing stress following a reassignment to patrol duty. *Robbins*, 177 Ill. 2d at 537. The officer's job stressors stemmed from "(1) his supervisor's criticism of the timeliness and quality of his reports, and (2) his anxiety that his fellow patrol officers were younger and better trained." *Id.* at 536. Additionally, the officer witnessed a man shoot himself while on duty. *Id.* Nevertheless, he continued working for another two years, until he injured his hand while on patrol. *Id.* at 536-37. After his hand healed, he returned to work, but then was put on administrative leave and deemed unfit for duty. *Id.* at 537. The supreme court noted that the Board's psychologist concluded that the officer's stress was not related to any specific act as a police officer, but instead to general work stress, and that his own psychologists supported this theory. *Id.* at 544. Indeed, his psychologist determined that the officer's "past exposure to occasional violence was not problematic for him" but that "[h]is continuous exposure to possible violence, as well as the pace of his duties in general, were of considerable stress." (Emphasis omitted and internal quotation marks omitted.) *Id.* The court was clear that "generalized police stress of multiple origins" does

not equate to an act of duty and found that "this record contains ample evidence that [the officer's] stress was the result of his anxiety over his job performance, which civilians regularly suffer, and not the performance of a specific act of duty." *Id.* at 543-44.

¶ 56    This case is similar to *Robbins*. While Kelly had a history of psychological problems, his disability is not linked to an identifiable incident that a civilian would not experience—fear of legal liability and losing his career due to the consequences of his misconduct when he was not at work. The evidence does not support Kelly's claim that he was struggling to cope psychologically after a specific act of police duty on April 7, 2014.

¶ 57    While Kelly had longstanding psychological issues, those issues did not cause him to be permanently unable to work until after the LaPorta jury verdict was rendered in late 2017. After the April 7, 2014, incident, Kelly was clearly performing police work for two or three years. We cannot say that the Board's decision was against the manifest weight of the evidence. Rather, this record contains ample evidence that Kelly's PTSD was the result of his anxiety, experienced in late 2017, over his job security based on his 2010 off-duty misconduct in the LaPorta matter. Moreover, that anxiety in 2017 would have exacerbated his preexisting psychological problems. Kelly's anxiety over his job security is a stressor regularly suffered by civilians and was not incurred in the performance of a specific act of duty.

¶ 58    We therefore hold that the Board's finding that Kelly's injury did not occur in the performance of an act of duty was not against the manifest weight of the evidence. Accordingly, we affirm the Board's decision that Kelly's injury did not result from the performance of an act of duty. However, as discussed above, we affirm the judgment of the circuit court to remand this matter to the Board to award Kelly an ordinary disability pension.

¶ 59                                B. Attorney Fees and Costs

¶ 60     Kelly argues that the circuit court's denial of attorney fees on the basis that the court did not have jurisdiction was erroneous because (1) the clear language of the Pension Code provides for attorney fees only when a matter has advanced to the stage of administrative review, (2) attorney fees are recoverable only for an administrative appeal and not for representation before the Board, (3) the Pension Code does not explicitly give the Board sole jurisdiction to determine the award of attorney fees to officers who prevail in reversing the Board's wrongful denial of benefits, and (4) the legislative history, logic, efficiency, and the Pension Code's purpose to provide benefits to officers in an expeditious manner do not support the proposition that the Board has exclusive jurisdiction to award attorney fees.

¶ 61     In response, the Board does not dispute the reasonableness of the fees requested in Kelly's petition. Instead, the Board argues that the circuit court lacked jurisdiction to award fees and costs for an appeal on administrative review, only the Board could award fees against itself, and Kelly is not entitled to fees under the Pension Code because the circuit court awarded him ordinary disability benefits instead of duty disability benefits.

¶ 62     According to the record, after the circuit court reversed the Board's decision that Kelly was not disabled and ordered the Board to award him ordinary disability benefits, Kelly petitioned for $16,510 in attorney fees and $400.24 in filing fees. He attached to his petition an affidavit of an attorney who practices in this area and affirmed that $300 an hour for attorney fees and $100 an hour for paralegal time was reasonable and customary.

¶ 63    The circuit court denied Kelly's fee petition, ruling that the court lacked jurisdiction because section 5-189 of the Pension Code (40 ILCS 5/5-189 (West 2020)) gave the Board exclusive original jurisdiction in all matters relating to or affecting the fund.

¶ 64    This issue involves a matter of statutory construction, which is a question of law that we review *de novo*. *People v. Gonzalez*, 388 Ill. App. 3d 1003, 1005 (2009). The principles of statutory construction are familiar:

> "The primary rule of statutory interpretation is that a court should ascertain and give effect to the intention of the legislature. The legislative intent should be sought primarily from the language used in the statute. [Citation.] The statute should be evaluated as a whole; each provision should be construed in connection with every other section. [Citation.] 'Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature.' [Citation.]" *Abrahamson*, 153 Ill. 2d at 91.

¶ 65    Section 5-228 of the Pension Code addresses administrative review and provides:

> "(a) The provisions of the Administrative Review Law, and all amendments and modifications thereof and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article. ***
>
> (b) If any policeman whose application for either a duty disability benefit under Section 5-154 or for an occupational disease disability benefit under Section 5-154.1 has been denied by the Retirement Board brings an action for administrative review challenging the denial of disability benefits and the policeman prevails in the action in

administrative review, then the prevailing policeman shall be entitled to recover from the Fund court costs and litigation expenses, including reasonable attorney's fees, as part of the costs of the action." 40 ILCS 5/5-228 (West 2020).

¶ 66 Section 5-189 of the Pension Code provides that the Board has the power

"[t]o authorize the payment of any annuity, pension, or benefit granted under this Article or under any other Act relating to police pensions, heretofore in effect in the city which has been superseded by this Article; to increase, reduce, or suspend any such annuity, pension, or benefit whenever any part thereof was secured or granted or the amount thereof fixed, as the result of misrepresentation, fraud, or error; provided, the annuitant, pensioner or beneficiary concerned shall be noticed and given an opportunity to be heard concerning such proposed action.

The Board shall have exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." *Id.* § 5-189.

¶ 67 The plain language of section 5-228 indicates that attorney fees and costs are awarded to an officer who prevails against the Board by challenging on administrative review the denial of the officer's application for duty disability benefits. Although section 5-228 does not state that the court awards the prevailing officer fees and costs, the court, and not the Board, adjudicates the matter on administrative review. Under the Administrative Review Law, once the administrative review action is filed, the Board loses jurisdiction over the case. 735 ILCS 5/3-104 (2020) ("[j]urisdiction to review final administrative decisions is vested in the Circuit Courts, [except that review of the Illinois Educational Labor Relations Board's final decision is vested in the appellate

court]. \*\*\* The court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition of the action."). Under the Pension Code, claims for attorney fees are specifically linked to the administrative review action, not the proceedings before the Board. Moreover, the Pension Code does not explicitly give the Board the power to assess attorney fees in administrative matters. *Cf.* 820 ILCS 305/16 (West 2020) (the Workers' Compensation Act explicitly states that "[t]he Commission shall have the power to determine the reasonableness and fix the amount of any fee of compensation charged by any person, including attorneys \*\*\* for any service performed in connection with this Act").

¶ 68     The Board argues that it has sole jurisdiction to assess attorney fees and costs as part of an administrative action because section 5-189 of the Pension Code states that the Board has exclusive original jurisdiction in all matters relating to or affecting the fund. We disagree. Section 5-189 concerns the Board's power to authorize the payment of any annuity, pension, or benefit, and the term "benefit" throughout the Pension Code refers to death, disability, and occupational benefits, not attorney fees. See 40 ILCS 5/5-153 to 5/155 (West 2020). Nothing in the Pension Code gives the Board any power in administrative reviews. Because attorney fees can be recovered only for a successful administrative appeal, and not a successful outcome before the Board prior to review, the legislature clearly intended that attorney fees are determined by the court, not the Board that erroneously denied the officer disability benefits.

¶ 69     Next, the Board argues that Kelly does not qualify for an attorney fee award because he was not successful in obtaining a duty disability benefit on administrative review and an award of attorney fees and costs is expressly contingent upon the type of disability benefits sought and

awarded on administrative review. According to the Board, for Kelly to prevail under section 5-228, he must be awarded a duty disability benefit on administrative review instead of an ordinary disability benefit. We disagree.

¶ 70     The plain language of section 5-228 provides that an officer is entitled to recover attorney fees and costs if (1) the Board denies the officer's application for "duty disability benefits," (2) the officer brings an action challenging the denial of "disability benefits" on administrative review, and (3) the officer "prevails" in the action in administrative review. Here, the Board denied Kelly's application for duty disability benefits, Kelly appealed the Board's decision on administrative review, and the circuit court ordered the Board to award Kelly ordinary disability benefits. Section 5-228 does not state that an officer must be awarded duty disability benefits to prevail on administrative review. The Pension Code does not define the term "prevail," but that word is commonly defined as "1: to gain ascendancy through strength or superiority: TRIUMPH 2: to be or become effective or effectual 3: to use persuasion successfully." Merriam-Webster's Collegiate Dictionary (11th ed. 2006). This court has stated that "[t]o qualify as a prevailing party, a plaintiff must succeed in obtaining some relief from the defendant against whom attorney fees are sought." *Community Consolidated School District No. 54 v. Illinois State Board of Education*, 216 Ill. App. 3d 90, 94 (1991); see *Powers v. Rockford Stop-N-Go, Inc.*, 326 Ill. App. 3d 511, 515 (2001) ("A successful litigant is still considered the prevailing party *** even if the judgment amount is below the amount claimed.").

¶ 71     Accordingly, we conclude that Kelly prevailed when he received a judgment ordering the Board to award him ordinary duty benefits and therefore is entitled to an award of attorney fees and costs. We remand this matter to the circuit court to determine the amount of Kelly's attorney

fees and costs, pursuant to section 5-228 of the Pension Code, and postjudgment interest at 9%, pursuant to section 2-1303 of the Code of Civil Procedure (735 ILCS 5/2-1303 (West 2020)), from the date of the circuit court's November 23, 2020, decision. Kelly is not entitled to attorney fees and costs for his appeal to this court because he did not prevail on his claim seeking duty disability benefits, since we are affirming the judgment of the circuit court that awarded him ordinary disability benefits.

¶ 72                              III. CONCLUSION

¶ 73    For the foregoing reasons, we (1) affirm the judgment of the circuit court that reversed the Board's determination that Kelly was not disabled and ordered the Board to award Kelly ordinary disability benefits and (2) reverse the judgment of the circuit court that denied Kelly's petition for attorney fees and costs. We remand this matter to the circuit court for a determination on the appropriate amount of Kelly's attorney fees and costs.

¶ 74    Circuit court judgment affirmed in part and reversed in part.

¶ 75    Board decision affirmed in part and reversed in part.

¶ 76    Cause remanded to the circuit court.

**No. 1-21-0483**

| | |
|---|---|
| **Cite as:** | *Kelly v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 2022 IL App (1st) 210483 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-13045; the Hon. Sanjay Tailor and the Hon. Cecilia Horan, Judges, presiding. |
| **Attorneys for Appellant:** | Michael Rothmann, of Law Office of Martin L. Glink, of Arlington Heights, for appellant. |
| **Attorneys for Appellee:** | Richard J. Reimer and Vincent C. Mancini, of Reimer Dobrovolny & LaBardi PC, of Hinsdale, for appellee. |