2022 IL App (1st) 211315-U
No. 1-21-1315
Order filed July 18, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| EDWIN HERNANDEZ, JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 21 CH 2595 |
| | ) | |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) | |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) | |
| CHICAGO, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Respondent-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the Board's decision concluding that petitioner is entitled to duty disability benefits at 50% of his salary as his disability resulted from a preexisting physical defect. We further affirm the circuit court's decision that petitioner is not entitled to fees and costs.

¶ 2    Edwin Hernandez Jr. appeals from an order of the circuit court affirming a decision by the

Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago. Hernandez

applied to the Board for duty disability benefits under section 5-154 of the Illinois Pension Code (Code) (40 ILCS 5/5-154(a) (West 2018)). The Board determined that Hernandez receive benefits at 50% of his salary rather than 75% because his disability resulted from a physical defect that existed at the time of his on-duty injury. On administrative review of the Board's decision, the circuit court affirmed.

¶ 3    On appeal, Hernandez argues that the Board erred in concluding that he had a physical defect that predated his on-duty injury, and the circuit court erred in denying him attorneys' fees and costs. We affirm.

¶ 4                                Background

¶ 5    Hernandez, a Chicago police officer, applied to the Board for duty disability benefits. In an attached affidavit, he averred that, on October 9, 2018, while on duty, he twisted and hyperextended his left knee in a foot chase. The injury prevented him from performing his duties.

¶ 6    The Board held a hearing on Hernandez's application. Hernandez testified that he became a police officer in June 2013. On October 9, 2018, he chased robbery suspects through an abandoned football field with uneven ground. He stepped in a hole with his left leg, and his leg hyperextended and twisted. The pain caused him to stop and stumble. That day, he filed an "Injury on Duty" report explaining that he twisted his left knee while chasing a suspect on uneven ground. Although his left meniscus was repaired in 2012, he healed completely and had no problems with his knee until October 9.

¶ 7    Since that date, Hernandez had undergone four surgeries, including a "very extensive and brutal surgery," in which doctors "disassembled" his knee, implanted cartilage, and "reassembled"

his knee. On February 25, 2021, he applied to return to work. His application remained pending at the time of the hearing, but he would return as soon as able.

¶ 8    On cross-examination by the Board-appointed hearing officer, Hernandez testified that, although police department records indicated that he missed 46 days of work in 2017 due to an injury to his left knee, the records were incorrect, and that injury was to his groin.

¶ 9    Dr. Craig Westin, Hernandez's orthopedic surgeon, testified that he first examined Hernandez in August 2019. He reviewed Hernandez's medical records, including a MRI and pictures from a diagnostic arthroscopy, which he opined was more suited to assessing cartilage issues than an MRI. He diagnosed Hernandez with a "new injury" to the cartilage on the back of his kneecap and a "corresponding defect of cartilage in the groove where the kneecap sits." In his opinion, the injury occurred when Hernandez twisted his knee during the foot chase. His kneecap did not dislocate but "slipped out, sort of off track," and he lost cartilage where his bones touched. The MRI and arthroscopy pictures indicated Hernandez was "fine" before the foot chase. Dr. Westin ultimately performed three surgeries on Hernandez: an arthroscopy in October 2019, the January 2020 cartilage implant surgery, and another arthroscopy in September 2020.

¶ 10    Dr. Westin prepared a narrative report on February 15, 2021. Before doing so, he reviewed a report by Dr. Brian Cole, an orthopedic surgeon who had performed an independent medical examination of Hernandez on March 2, 2020. Dr. Cole opined that Hernandez's October 9 injury exacerbated a preexisting cartilage loss. Dr. Westin, however, believed the abnormal cartilage appearance he observed when performing the October 2019 arthroscopy was more consistent with an injury from the prior year than with age-related arthritis or a "wearing *** out" of the cartilage. The cartilage injury was consistent with an injury from twisting the knee and corresponded to the

area in which Hernandez experienced pain. The cartilage loss did not result from Hernandez's meniscus repair or a naturally progressing condition before October 9. Thus, Dr. Westin opined that Hernandez's injury did not result from a prior physical defect.

¶ 11    On cross-examination, Dr. Westin admitted that his narrative report stated it was impossible to know the "exact status" of Hernandez's knee cartilage just before his injury.

¶ 12    The Board called Dr. Cole. On March 2, 2020, at the Board's request, Dr. Cole had performed an independent medical examination of Hernandez and reviewed his medical records. Dr. Cole concluded that Hernandez could not perform his assigned duties, and his disability was related to his on-duty injury. He opined that Hernandez's October 9 injury aggravated a preexisting asymptomatic, arthritic change to his cartilage. The preexisting condition may not have become symptomatic but for the injury.

¶ 13    The hearing officer asked if Dr. Cole reviewed an MRI of Hernandez's knee taken on October 26, 2018, and the following colloquy occurred:

> "A. Yes, I did.
>
> Q. And can you tell the Members of the Board is this a normal MRI of the knee?
>
> A. I mean, I would say it's normal for his age.
>
> Q. What do you mean by that?
>
> A. I see these kinds of findings routinely on MRIs in asymptomatic individuals. It's part and parcel to what happens as we just live life. Most times they're not symptomatic but can, indeed, become symptomatic. So there is really nothing in my opinion acute here. This is just sort of very typical findings that we see in all comers, probably in better than 50 or 60 percent.

And this is an area of work that I've published on active patients and less active patients, so these are very common findings. Whether or not they are relevant is a different discussion, but they're common findings on an MRI. So if you say are these normal findings, the answer is yes. Is it a normal MRI, meaning no findings; no, it's not a normal MRI."

¶ 14 Hernandez's cartilage condition—which Dr. Cole referred to as a "chondromalacia problem" and a "disease"—was "*per se*" degenerative and would have taken years, perhaps a decade, to develop. Dr. Cole found Dr. Westin's opinion that the cartilage damage was "new" to be incorrect and "illogical." It was "preposterous" that Hernandez's cartilage damage happened the day of his injury. Only a direct blow to the front of the knee could have caused the "full-thickness or *** nearly full-thickness defect" in Hernandez's cartilage in a single event, not a twisting motion or even a dislocation of the kneecap. Dr. Cole concurred that Hernandez's meniscus repair was irrelevant to his injury.

¶ 15 On cross-examination, Dr. Cole agreed that "the cartilage findings were normal for a person of [Hernandez's] age." But, Dr. Cole's examination of Hernandez was limited because it occurred within 60 days after Hernandez's January 2020 surgery.

¶ 16 In its finding of facts, the Board concluded that Hernandez's disability resulted from a physical defect that existed on October 9, 2018. The Board stated that Drs. Westin and Cole presented conflicting opinions on whether Hernandez had a preexisting condition, and the board placed greater weight on Dr. Cole's conclusions. The Board found that Dr. Westin contradicted himself by testifying that no preexisting condition contributed to Hernandez's disability. At the same time, his report stated it was impossible to know the exact status of his knee cartilage before

the injury. Accordingly, the Board awarded Hernandez 50% duty disability benefits under section 5-154(a)(i) of the Code.

¶ 17    Hernandez filed a petition for administrative review of the Board's decision in the circuit court, seeking a 75% benefit award. The circuit court affirmed the Board's decision and denied Hernandez's request for costs and attorney's fees.

¶ 18                                    Analysis

¶ 19    Hernandez now appeals, arguing that his disability did not result from a physical defect at the time of his injury. In doing so, Hernandez does not dispute Dr. Cole's testimony that his disability resulted from a degenerative cartilage problem. Rather, he argues that even accepting Dr. Cole's testimony, his cartilage condition was not a physical defect as Dr. Cole testified it is "normal" for persons his age. Thus, Hernandez argues he was entitled to a duty disability benefit at 75% of his salary. The Board maintains that his cartilage condition was a physical defect, entitling him to a duty disability benefit at 50% of his salary.

¶ 20                                Standard of Review

¶ 21    In administrative review actions, we review the Board's decision, not the circuit court's. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). The standard of review varies depending on whether the question is one of fact or law or a mixed question of fact and law. *Kelly v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 2022 IL App (1st) 210483, ¶ 30. We review findings of fact under the manifest weight of the evidence standard. *Glaser v. City of Chicago*, 2018 IL App (1st) 171987, ¶ 20. A finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Kelly*, 2022 IL

App (1st) 210483, ¶ 30. And the Board's factual findings are deemed *prima facie* true and correct. *Glaser*, 2018 IL App (1st) 171987, ¶ 20.

¶ 22    We will not reverse a Board's factual finding because the opposite conclusion is reasonable. *Kelly*, 2022 IL App (1st) 210483, ¶ 30. Rather, we will affirm so long as evidence in the record supports the Board's decision. *Id.* Moreover, the agency assesses witness credibility, draws inferences from the facts, and resolves evidentiary conflicts, including conflicts in medical evidence. *Swanson v. Board of Trustees of Flossmoor Police Pension Board*, 2014 IL App (1st) 130561, ¶ 31.

¶ 23    We review questions of law *de novo* and mixed questions of law and fact for clear error. *Kelly*, 2022 IL App (1st) 210483, ¶ 31. A mixed question of law and fact includes one in which "the historical facts are not in dispute and the issue is whether the established facts satisfy the statutory standard." (Internal quotation marks omitted.) *My Baps Construction Corp. v. City of Chicago*, 2017 IL App (1st) 161020, ¶ 115. A clearly erroneous decision reveals "the definite and firm conviction that a mistake has been made." *Kelly*, 2022 IL App (1st) 210483, ¶ 31.

¶ 24    Lastly, we liberally construe the Code in favor of those the Code intended to benefit, the applicants. *Thompson v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 379 Ill. App. 3d 498, 504 (2008). Even so, the "plaintiff in an administrative proceeding bears the burden of proof" and will be denied relief if he or she fails to sustain their burden. *Wade*, 226 Ill. 2d at 505.

¶ 25    Hernandez argues that the record contains "no evidence" to support the Board's decision, a question to which we apply the manifest weight of the evidence standard. *Cole v. Retirement Board of Policemen's Annuity & Benefit Fund*, 396 Ill. App. 3d 357, 367 (2009). Despite this, the

clearly erroneous standard applies to the extent he argues that his cartilage condition was not a physical defect, which presents a mixed question of law and fact. See *My Baps*, 2017 IL App (1st) 161020, ¶¶ 115-16. The outcome here is the same under either standard.

¶ 26                        Preexisting Condition or Injury Incurred Performing Act of Duty

¶ 27    Section 5-154 of the Code entitles an active police officer who becomes disabled due to an injury incurred in performing an act of duty to a duty disability benefit equal to 75% of his salary while he is disabled. 40 ILCS 5/5-154(a) (West 2018). But, the duty disability benefit becomes equal to 50% of his salary "[i]f the disability resulted from any physical defect or mental disorder or any disease which existed at the time the injury was sustained ***." 40 ILCS 5/5-154(a)(i) (West 2018). The 50% duty disability benefit applies notwithstanding any effect the injury may have had on the preexisting condition. *Cole*, 396 Ill. App. 3d at 369 (quoting *Samuels v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 289 Ill. App. 3d 651, 661-62 (1997).

¶ 28    The parties agree that Hernandez was injured while performing an act of duty and is disabled. Hernandez maintains that his disability did not result from a physical defect or disease which existed on October 9, 2018. As noted, Hernandez does not dispute Dr. Cole's testimony that his disability resulted partly from the state of the cartilage in his knee on that date. Instead, he contends that, even if his cartilage problem constituted a preexisting condition, it was not a physical defect.

¶ 29    In support of his argument, Hernandez contends that Dr. Cole testified the condition of his cartilage, as shown on the MRI taken on October 26, 2018, was "normal." Hernandez argues that, as Dr. Cole testified, his preexisting cartilage condition was common among people his age, it was

not a physical defect. He claims that Dr. Cole never explicitly labeled his cartilage condition as a physical defect.

¶ 30    After reviewing the record, we conclude that the Board did not rule against the manifest weight of the evidence or clearly err when it determined that Hernandez's cartilage condition was a preexisting physical defect and resulted in his disabling injury. Although the Code does not define the term "physical defect," contrary to Hernandez's assertion, Dr. Cole explicitly referred to Hernandez's cartilage loss as a "disease" and a "defect." He testified that the "disease" would have taken years to develop and found it "preposterous" that Hernandez's cartilage damage happened the day of his injury. Dr. Cole explained that only a direct blow to the front of the knee could have caused the "full-thickness or *** nearly full-thickness *defect*" shown on the MRI in a single event, and Hernandez did not suffer this type of blow. (Emphasis added.).

¶ 31    In addition, Dr. Cole explained that, although the cartilage *findings* in Hernandez's October 2018 MRI was "normal," as in common, for someone Hernandez's age, a "normal" MRI would have no findings at all. So Hernandez's MRI was "not a normal MRI." Further, the "problem" was degenerative and contributed to Hernandez's symptoms. While Dr. Westin believed the incident caused Hernandez's cartilage damage, he referred to the damage as a "*defect* of cartilage in the groove where the kneecap sits." (Emphasis added.).

¶ 32    Ultimately, Dr. Cole opined that (i) the October 2018 MRI reflected that Hernandez had cartilage damage before his October 9, (ii) the cartilage damage was a degenerative problem that the injury could not have caused, and (iii) Hernandez's symptoms occurred because the injury aggravated the preexisting cartilage condition. Given this record, we cannot say that the Board's finding was against the manifest weight of the evidence when it concluded that Hernandez's

cartilage condition was a preexisting physical defect and caused his disability, entitling him to only a 50% of salary benefit. See *Kelly*, 2022 IL App (1st) 210483, ¶ 30 (conclusion should be upheld under manifest weight of evidence standard if record contains evidence supporting conclusion); see also *Heabler*, 2013 IL App (1st) 111968, ¶ 18 (noting, agency's province to draw inferences from facts and resolve evidentiary conflicts); *Samuels*, 289 Ill. App. 3d at 662 (officer entitled to 50% of salary if disability resulted from preexisting condition notwithstanding effect injury may have had on preexisting condition). Nor can we say that the Board's conclusion was clearly erroneous, as we are not "left with the definite and firm conviction that a mistake has been made." *Kelly*, 2022 IL App (1st) 210483, ¶ 31.

¶ 33    Hernandez contrasts his case with *Cole* and *Samuels*, where the plaintiffs were only entitled to 50% duty disability benefits because their disabilities resulted from degenerative disc disease. See *Cole*, 396 Ill. App. 3d at 370-71; *Samuels*, 289 Ill. App. 3d at 662-63. He cites a medical website that notes degenerative disc disease causes pain in about 5% of adults. He contends that, unlike degenerative disc disease, his cartilage condition is not a physical defect or disease because Dr. Cole testified it is widespread. Notably, Hernandez cites no authority for the contention that a preexisting condition must pass a certain threshold of rarity to qualify as a physical defect or disease under section 5-154(a)(i). Moreover, in deciding *Cole* and *Samuels*, this court did not rely on degenerative disc disease's rarity. Here, the record contains ample evidence to support the Board's conclusion that Hernandez's cartilage condition was a preexisting physical defect.

¶ 34                             Attorney's Fees and Costs

¶ 35    Lastly, Hernandez argues that the circuit court erred in denying his request for costs, expenses, and attorney's fees under section 5-228(b) of the Code (40 ILCS 5/5-228(b) (West Supp.

2019)). The plain language of section 5-228(b) requires the police officer to prevail in the administrative review action to recover costs and fees. *Kelly*, 2022 IL App (1st) 210483, ¶ 67. To prevail, the police officer "must succeed in obtaining some relief" in the administrative review action, not in proceedings before the Board. (Internal quotation marks omitted.). *Id.* ¶¶ 67, 70.

¶ 36    While Hernandez obtained relief in proceedings before the Board when the Board granted him duty disability benefits at 50% of his salary, the circuit court affirmed the Board's decision when he petitioned for administrative review. The circuit court did not grant Hernandez any relief. Thus, Hernandez may not recover under section 5-228(b).

¶ 37    We affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.